769 P.2d 1122

David J. URRY, Claimant–Appellant,

v.

WALKER AND FOX MASONRY CONTRACTORS, Employer, and Argonaut–Northwest Insurance Company, Surety; and Conex, Inc., Employer, and United Pacific Insurance Company, Surety; Defendants–Respondents.

No. 16916.

Supreme Court of Idaho.

Feb. 28, 1989.

Rehearing Denied Feb. 28, 1989.

Goicoechea Law Office, Boise, for claimant-appellant. Lynn M. Luker, argued.

Moffatt, Thomas, Barrett & Blanton, Chtd., Boise, for defendants-respondents Conex, Inc., et al. John W. Barrett, argued.

Brady & McDaniel, Chtd., Boise, for defendants-respondents Walker and Fox, et al. Michael G. Brady, argued.

1988 OPINION NO. 91, ISSUED OCTOBER 11, 1988, IS HEREBY WITHDRAWN AND THIS OPINION IS SUBSTITUTED THEREFOR.

BURNETT, Justice Pro Tem.

In this case we examine the distinction between impairment and disability under the workers' compensation statutes. The case comes to us on appeal from an order of the Industrial Commission, denying David Urry's application for permanent partial disability benefits in connection with an injury suffered in 1984. Because Urry had received such benefits for a similar injury in 1979, his application sought either to modify the previous agreement or to obtain a new award of additional benefits. The Commission denied the application in both respects. Today we affirm the Commission's order insofar as it refuses to reopen the prior compensation agreement, but we vacate that part of the order which denies additional compensation for the 1984 injury. We remand the case for reconsideration of the latter issue.

The background facts are not disputed. Urry was born with a congenital abnormality of the left femur known as Legg–Perthes disease. He occasionally experienced pain in his left hip until reparative surgery was performed in 1971. Urry noted few problems after the surgery. In fact, he worked in jobs involving heavy manual labor until 1979. In the spring of that year, while working as a hod carrier for Walker and Fox Masonry Contractors, Urry injured his hip. The damage was serious, requiring a total surgical hip replacement. Following recovery from this surgery the hip became asymptomatic. Nevertheless, Urry's physician recommended some work restrictions and evaluated him as having a permanent partial impairment equal to twenty percent of the whole person. Ten percent was attributed to Urry's preexisting condition and ten percent to the 1979 accident. Subsequently, Walker and Fox, through its surety, entered a compensation agreement with Urry, providing payments computed on a ten percent work-related disability rating. This agreement was approved by the Industrial Commission.

Urry returned to work. He performed various jobs, some involving moderately strenuous manual labor. The hip remained relatively asymptomatic. However, in March, 1984, while working as a pipe layer for Conex, Inc., Urry reinjured the hip. This injury forced him to undergo another surgical hip replacement. When the postoperative recovery was complete, Urry's physician (a doctor different from the physician who treated him in 1979) evaluated his impairment. The doctor opined that Urry was suffering from the same degree of permanent partial impairment which had existed after the 1979 accident—twenty percent of the whole person. Urry disagreed, claiming that his impairment had increased because the injured hip was no longer asymptomatic. He asserted that pain in his hip prevented him from continuing to perform many of the tasks he had performed from 1979 to 1984. He applied to the Commission for additional compensation.

The Commission determined that the need for surgery in 1984 arose primarily from the accident that year. Accordingly, the Commission held Conex responsible for all *temporary* disability benefits and medical benefits, without apportionment of any share to Walker and Fox. Conex has not challenged that determination. The Commission later addressed the question of *permanent* partial disability benefits. The Commission found that Urry had sustained no impairment beyond the level produced by the 1979 injury. The Commission concluded that Urry was not entitled to receive any permanent partial disability benefits from Conex. The Commission also refused to reopen the earlier compensation agreement with Walker and Fox. This appeal followed.

I

Urry contends that if—as the Commission implicitly determined—his impairment following the 1979 injury was as great as his impairment in 1984, then he was undercompensated for the 1979 injury. This, he claims, is a "manifest injustice" warranting modification of the agreement under I.C. § 72–719. We will consider in a moment whether the Commission made a correct evaluation of impairment resulting from

the 1984 accident. Our immediate focus is on the compensation agreement for 1979.

The agreement provides, in pertinent part, that "the employee has been given a permanent *disability and/or impairment* rating of: 10% as compared to the loss of the whole man...." (Emphasis added.) The agreement lumps together the terms "impairment" and "disability." These words denote different concepts. Impairment is an "anatomic or functional abnormality or loss...." I.C. § 72–422. It is a "basic consideration" in determining disability. *Id.* However, the extent of impairment is not necessarily equal to the rating of disability. Rather, disability is determined by viewing the impact of the impairment upon the individual in light of "nonmedical factors, such as age, sex, education, economic and social environment." I.C. § 72–425. When the impact of impairment is evaluated in light of these nonmedical factors, a determination can be made of the individual's reduced ability to engage in gainful activity. This is the "disability" for which compensation is paid. I.C. § 72–423.

Where a compensation agreement blurs the distinction between impairment and disability, it may be unclear whether disability has been properly determined and whether such a determination should be accorded finality. Any ambiguity must be resolved by ascertaining the intent of the parties. *See Woodvine v. Triangle Dairy, Inc.*, 106 Idaho 716, 682 P.2d 1263 (1984); *Fenich v. Boise Elks Lodge No. 310*, 106 Idaho 550, 682 P.2d 91 (1984). Intent is a question of fact. Here, the Commission did not make a specific finding as to the parties' intent. However, lack of a finding does not invariably require a remand. Where the record is clear, yielding an obvious answer to the issue at hand, an appellate court may supply the requisite finding. *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 646 P.2d 988 (1982).

■ We believe this issue yields a clear answer. There is no evidence that the degree of impairment in 1979 was greater than twenty percent. Indeed, as we have noted, Urry's hip was relatively asymptomatic after the 1979 surgery. Moreover, the record is silent as to any nonmedical factors, following the 1979 surgery, that could have caused the disability rating to deviate from the medically determined degree of impairment. Consequently, we find that the parties had no basis to establish different percentage figures for impairment and disability. We hold that the Commission did not err in refusing to reopen the case concerning the 1979 injury.

II

We now turn to the Commission's determination that Urry was entitled to no additional permanent disability benefits for the 1984 injury. The Commission ruled that absent an increase in permanent impairment attributable to the 1984 accident, there could be no change in his permanent partial disability rating. We do not quarrel with this general proposition. As we have explained, impairment and disability are conceptually distinct; but there must be impairment for disability to exist. *A fortiori*, there must be an increased level of impairment for a new, additionally compensable disability to exist.

Here, Urry claimed an increased level of impairment, relying upon evidence that his previously asymptomatic hip had become painful after the 1984 injury. The Commission's decision (actually, a referee's decision approved and adopted by the Commission) did not specifically resolve the pain issue. Rather, it recited testimony adduced by both sides, without specifically identifying which evidence the Commission accepted or rejected.

The Commission's recital of evidence included testimony supporting Urry's claim that his impairment increased after the 1984 injury. In particular, the decision referred to testimony of two physicians who opined that Urry should be trained for sedentary jobs in the future. One of these doctors specifically noted Urry's complaint of "a lot of pain in his left hip." The Commission's recital also included testimony of a rehabilitation consultant who stated that the pain caused Urry's work restrictions to be much greater after the 1984 injury than after the 1979 injury. Finally,

the recital included Urry's own testimony that he suffered from prolonged periods of pain in his hip, and was unable to perform certain tasks, after the 1984 operation. Despite this recited evidence, the Commission ultimately found that Urry's impairment had not changed from 1979 to 1984.

■ We recognize, of course, that a finding on the question of impairment must be upheld when supported by substantial evidence. I.C. § 72–732(1). In this case, however, the impairment question was entirely derivative of the pain issue. The Commission made no finding as to whether the hip pain actually existed, whether the pain (if it did exist) was attributable to the 1984 injury, or whether the pain (if it did exist and was attributable to the 1984 injury) had produced any additional "functional ... loss" within the meaning of I.C. § 72–422. Without a finding on at least one of these points, it is difficult to understand how the Commission could have determined that Urry's impairment with an allegedly painful hip after 1984 was the same as his impairment with an asymptomatic hip after 1979.

Neither can we supply such a finding on appeal. As noted in Part I of this opinion, when a fact-finding court or tribunal fails to make a finding, the appellate court may supply the finding "*only* where the record is clear, and yields an obvious answer to the relevant question...." *Pope v. Intermountain Gas Co.,* 103 Idaho at 225, 646 P.2d at 995 (emphasis original). The pain issue in this case does not yield such an "obvious answer."

■ Conex maintains that the Commission's decision should be affirmed despite the lack of a finding on pain. We are asked to focus upon the Commission's ultimate determination that Urry's permanent partial impairment in 1984 was twenty percent. Conex appears to argue that this percentage figure implicitly signifies a

finding adverse to the claimant on the pain issue. The argument is logical in the abstract. However, it disregards other portions of the Commission's decision.

As noted above, the Commission's "Findings of Fact" referred extensively to the evidence of pain. It would have been incongruous for the Commission to recite such testimony at length, only to reject it silently. Indeed, the Commission's decision did not link the pain issue to the eventual finding of no additional impairment. Rather, in its "Conclusions of Law," the Commission referred to testimony regarding pain, and its effect on Urry's capabilities, in the context of *disability.* The Commission stated:

> [T]he Claimant argues that most of his disability resulted from his 1984 accident. From a factual standpoint, that argument is supported by the testimony of [the physical therapist] as well as that of the Claimant. However, ... without permanent impairment, there can be no permanent disability.... Since the Claimant had no permanent partial impairment as the result of his 1984 accident, he can have no permanent partial disability as a result of that accident.

This language reinforces our impression that the Commission did not reject the claimant's evidence of pain. Rather, the Commission appeared to treat the evidence as relevant to disability—an issue which the Commission then declined to reach because it had found no increased impairment. Thus, the structure and language of the Commission's decision strongly suggest that pain was treated not as a medical factor in determining impairment but rather as a "nonmedical factor" to be considered in determining a disability rating if, and only if, an additional impairment were otherwise found to exist.[1]

■ Such an approach to the pain issue would be erroneous as a matter of law. Pain can produce "functional ... loss" under I.C.

---

1. Urry's treating physician also may have been unsure of the proper legal categorization of the pain issue. In a letter quoted during a 1984 deposition, the doctor indicated that the claimant's permanent partial impairment likely would be 20% if he recovered asymptomatical-

ly. The doctor went on to say that if the recovery were not asymptomatic, there could be greater restrictions on the claimant's ability to work "and therefore perhaps the *disability* may be considerably greater." (Emphasis added.)

§ 72–422. Because it relates to functional loss, pain is a medical factor to be considered in determining impairment itself. When a physician is satisfied that pain is genuine, it can be used—like pathology or loss of structural integrity—to measure the extent of an impaired function. E. McBRIDE, DISABILITY EVALUATION 36–39 (6th ed. 1963). Of course, the physician's opinion is advisory to the Industrial Commission which, as the ultimate fact-finder, will determine the extent of impairment based on all the evidence of pain and other pertinent factors.

■ Because the Commission's decision appeared to link the pain issue with disability rather than impairment, its finding on impairment may have reflected a misapprehension of the governing law. When findings of fact are misdirected or incomplete due to legal error, they cannot be sustained by routine application of the "substantial error" standard of appellate review. If such findings are directly contrary to law, reversal is required. *E.g., Hanson v. BCB, Inc.,* 114 Idaho 131, 754 P.2d 444 (1988). By parity of reasoning, if a decision, taken as a whole, appears to reflect a misapprehension of law, the proper appellate response is to vacate the decision and to remand the case for reconsideration in light of the proper legal framework. Here, we hold that a remand is required.[2]

Conex has argued that a remand would be inconsistent with this Court's recent opinion in *Graybill v. Swift & Co.,* 115 Idaho 293, 766 P.2d 763 (1988). We disagree. In *Graybill* the Court stated that the Commission's finding on a question of impairment could be upheld upon testimony by a medical expert who took pain into account when rendering his opinion. Conex asserts that this statement is dispositive of the instant case because the physician who treated the 1984 injury, and who fixed the permanent partial impairment at twenty percent, made a general comment

that he would take pain into account whenever evaluating impairment. However, as mentioned in footnote 1, *infra,* the same doctor earlier had said that Urry's permanent partial impairment likely would be twenty percent *if* he recovered asymptomatically. The doctor further said that if the recovery were *not* asymptomatic, there could be greater restrictions on the claimant's ability to work.

Moreover, in *Graybill,* unlike this case, the question of impairment was not contested by the parties. The principal controversy was whether the claimant's disability rating should have been higher than his impairment rating. *Graybill* was not colored by uncertainty as to whether the Commission had properly treated pain as an impairment issue. There was no need, as there is here, for the Industrial Commission to clarify its determination as to the relationship between pain and impairment. Consequently, our decision today does not disturb *Graybill;* neither does *Graybill* alter our reason for remanding the present case to the Commission.

Finally, we consider Conex's assertion that a remand is unnecessary because the Industrial Commission must accept the opinion of a claimant's treating physician regarding pain and impairment. Conex bases this argument upon I.C. § 72–424, which describes the evaluation of permanent impairment as a "medical appraisal." We are not persuaded.

■ In this case, as we have noted, the statements made by the treating physician, at different points in time, were not entirely consistent. But in any event, Conex's play on the words "medical appraisal" cannot obscure the fundamental principle that the Industrial Commission, rather than the claimant's treating physician, is the fact-finder and the ultimate evaluator of impairment. The physician, as an expert witness,

---

**2.** We do not intimate by today's decision that the Commission in all cases must supplement its general finding on impairment with particular findings on every potential cause of impairment—such as pain, pathology and loss of structural integrity. Rather, our holding is a narrow one.

Where, as here, the general question of impairment turns on a specific issue (pain), and the Commission's failure to make a finding on that issue is coupled with language in the Commission's decision suggesting that the issue has been miscategorized, a remand is in order.

may provide information helpful to the Commission. However,

> [the] weight of the testimony of a physician as an expert is for the Industrial [Commission] to determine, and there is no distinction between expert testimony and evidence of other character as regards to the weight to be given it in a particular case.... [M]edical testimony should not be held to be conclusive, irrespective of other evidence.

*Walker v. Hogue*, 67 Idaho 484, 490, 185 P.2d 708, 711 (1947) (upholding Commission's apportionment of impairment and disability as between two accidents, despite treating physician's testimony that first accident was solely responsible).

A doctor should take complaints of pain into account when reaching an opinion regarding impairment. But his opinion on these matters is not binding upon the Commission. As noted in *Graves v. American Smelting & Refining Co.*, 87 Idaho 451, 455, 394 P.2d 290, 293 (1964), "[t]he opinions of an expert, whether given by direct testimony, or by way of written report, such as here, are not binding upon the trier of the facts, but are advisory only." It is noteworthy that in *Graves* this Court upheld a Commission finding of impairment and disability, based in part upon the claimant's testimony regarding his subjective symptoms of pain, even though a medical expert stated that he was unable to verify those symptoms objectively.

We conclude that this case must be remanded to the Commission for clarification of the Commission's determination of impairment in light of the evidence of pain. Such clarification is necessary to resolve the disputed issue of fact regarding the pain itself, and to assure that the Commission properly treats pain as a component of impairment under I.C. § 72–422. If the Commission finds pain and a nexus to functional loss, an additional impairment may exist. This additional impairment, viewed in light of nonmedical factors, may yield an increased disability rating.

As guidance on remand, we note that the impairment attributable to an injured and replaced hip is not among the "scheduled permanent impairments" enumerated in I.C. § 72–428. Rather, it is an unscheduled impairment, to be determined by analogy to the statutory schedule. This analogizing process is sufficiently flexible to recognize that a painful hip may produce greater functional loss than would an asymptomatic hip.

Accordingly, the order of the Industrial Commission, insofar as it denies permanent partial disability compensation for the 1984 accident, is vacated. The case is remanded for proceedings consistent with this opinion. Costs to Urry as against Conex, and to Walker and Fox as against Urry. No attorney fees on appeal.

BAKES, Acting C.J., HUNTLEY, J., and McFADDEN, J. Pro Tem., concur.

BISTLINE, Justice, concurring in part and dissenting in part.

I concur fully with Part II of the Court's opinion which remands this case to the Commission for further findings as to whether Urry suffers a permanent partial disability as a result of the 1984 accident.

I dissent from Part I, however, which refuses to reopen the case relating to the 1979 injury when Urry worked for Walker and Fox Masonry. The majority concedes that the 1979 compensation award "blurs the distinction between impairment and disability." *Supra* at 753, 769 P.2d at 1125. Nevertheless the majority reasons that no reversal is warranted because, so it is said, the record is clear that there is no evidence to sustain a finding that the degree of disability in 1979 was greater than 20 percent. I disagree with that conclusion as a matter of law. The treating physician, Dr. Howard Johnson, opines that as a result of the 1979 industrial accident Urry can no longer work as a hod carrier or do other heavy labor. Without question, then, Urry has lost some earning capability. This case should be remanded to the Commission with directions to conduct a hearing for the reception of evidence and determine the extent of Urry's disability—which very well may turn out to exceed physical impairment.

This Court cannot justify remaining oblivious to the circumstance that at the time the patently ambiguous compensation agreement[1] was executed in 1980, Urry did not have counsel. (David Urry's wife pursued a disability award on her husband's behalf, with the mistaken belief that such could be obtained through the federal Social Security Administration. *See* defendant's Exhibit 14.) It is seriously doubted the average layperson, without the aid of counsel, can adequately understand the all-important distinction between impairment and disability—a distinction with a difference which has confused lawyers, jurists, and the Commission for years.

The stated purpose of the worker's compensation law is to provide sure and certain relief to workers who have been injured while on the job. When that goal is kept in sight, it is readily seen that little has been done in this case toward achieving that goal where Mr. Urry very well may have been deprived of an entitlement simply because he was not knowledgeable enough to know that it will be a rare circumstance when an uncounselled claimant fares reasonably well in his dealings with a surety, although it certainly does happen. But on the other hand there are incidents such as happened in *Horton v. Truck Insurance Exchange, Surety for Garrett Freightlines,* 106 Idaho 895, 684 P.2d 297 (1984), where the surety without any advice to an uncounselled and uninformed Horton, or to his employer of over 30 years, sought to close out his file without complying with the statutory law requiring evaluation of medical impairment, or disability from work, and without any commensurate compensation award therefor.

---

1. The compensation agreement form signed in this case is identical to the one held ambiguous in *Woodvine v. Triangle Dairy, Inc.,* 106 Idaho 716, 682 P.2d 1263 (1984). It was stated:

    We note that since the intent of the parties to the compensation agreement is what ultimately determines whether the award is for permanent impairment or permanent disability, in the future a form of agreement which more clearly indicates the intention of the parties would be desirable.

    106 Idaho at 722 n. 4, 682 P.2d at 1269 n. 4.