992 P.2d 172

Rodney G. CLARK, Claimant–Appellant,

v.

CITY OF LEWISTON, Employer, and IDAHO STATE INSURANCE FUND, Defendants–Respondents.

No. 24830.

Supreme Court of Idaho.
Lewiston, October 1999 Term.

Dec. 22, 1999.

James C. Arnold, Lewiston, for appellant.

Hon. Alan Lance, Attorney General; Jay P. Gaskill, Special Deputy Attorney General, Lewiston, for respondent. Jay P. Gaskill argued.

SCHROEDER, Justice.

Rodney G. Clark (Clark) appeals an order of the Industrial Commission entered against him on May 28, 1998, determining that he is not entitled to permanent partial impairment benefits.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Clark began working for the City of Lewiston in 1978. Prior to the accident at issue in this case he had suffered numerous injuries from on-the-job activities. His claim in this case arises from injuries in an automobile accident on December 13, 1990, when he was traveling to a conference for the City of Lewiston. He was taken by ambulance to Deaconess Hospital in Spokane, Washington, where he was treated and released. X-rays of the cervical spine showed no acute injury, and his treatment consisted of stitches to close a laceration on his scalp. Thereafter, he was evaluated and treated by a number of doctors.

Dr. W. Bond saw Clark for the first time on December 14, 1990, in Lewiston. Dr. Bond diagnosed a moderate spasm of the cervical, mid-thoracic, and lumbar areas, tenderness of the shoulder, and whiplash of the cervical and thoracic spine. Dr. Bond pre-

scribed physical therapy for the neck and low back area. He then referred Clark to Dr. Kovach for an evaluation.

Clark saw Dr. Kovach on January 4, 1991. An X-ray showed significant degenerative spondylosis at C3–4 and C5–6, and Dr. Kovach diagnosed mechanical cervical spine pain due to the trauma of the automobile accident. According to Dr. Kovach, Clark suffered a soft tissue strain which would improve with time. Dr. Kovach noted that there was no evidence of any neurologic impairment.

On August 31, 1992, Clark saw Dr. Colburn and complained of back and neck pain. Dr. Colburn discovered that Clark's left leg was two-centimeters shorter than his right leg. He recommended that Clark use a heel lift to correct the imbalance.

On September 21, 1994, Clark saw Dr. Bond, complaining of fatigue, shortness of breath, and low back and neck pain. An MRI of the lumbar spine revealed a small bulging disc on the left side at L2–3 which protruded into the nerve opening. There was mild arthritis in the facets and constriction of the nerve opening at L3–4 with arthritis in the facets, and normal fusion at L4–S1. Another MRI was done on October 27, 1994, in response to Clark's complaints of neck and shoulder pain. This MRI showed end plate irregularity at C3–4, C4–5, and C5–6 with an anterolateral disc bulge at C5–6.

On November 7, 1994, Clark saw Dr. Folkes for a neurological examination at Dr. Bond's request. Clark complained of neck pain which he claimed stemmed from the December 13, 1990, automobile accident. Dr. Folkes indicated that Clark had full range of motion in his neck, no objective weakness of the upper or lower extremities, normal deep tendon reflexes, and no sensory deficit. Dr. Folkes recommended a soft-cervical collar for Clark to wear while sleeping and indicated that no further treatment was required.

On January 12, 1995, Clark saw Dr. Gerber to whom he was referred by Dr. Bond. Dr. Gerber diagnosed cervical and lumbar strain and recommended further conservative treatment. He prescribed muscle relaxants and physical therapy for four-weeks.

Larry Ohman, R.P.T., did a physical therapy evaluation which involved a plan of cervical traction, electrical stimulation, moist heat, and other modalities to decrease Clark's cervical pain and stiffness and to restore a normal range of motion.

Clark submitted to an independent medical examination on April 18, 1995, conducted by Dr. Alyea, an orthopedic surgeon, and Dr. Clark, a neurologist. They both diagnosed cervical and lumbar spondylosis, pre-existing and temporarily aggravated by the December 13, 1990, injury. They believed that Clark was stable and that no further treatment was needed, concluding that a permanent partial impairment (PPI) rating could not be assigned strictly on the basis of the December 13, 1990, injury because there was no objective evidence to support a worsening of Clark's pre-existing cervical and lumbar diseases. They indicated that a home cervical traction unit would benefit Clark and attributed a need for such a device to the natural progression of Clark's pre-existing spondylosis.

Clark returned to Ohman on July 13, 1995, to continue physical therapy for neck and left lumbosacral pain. The treatment lasted until October 31, 1995. During this period Clark was provided with an orthotic to relieve his hip pain and a home cervical traction for his neck pain. Ohman also recommended to Clark that he try a hospital bed for one month to see if it would aid him in sleeping. Dr. Bond approved the recommendation.

On August 15, 1996, Clark again returned to Ohman complaining of cervical pain, neck stiffness, and headaches. Clark mentioned that his working conditions involved more physical labor and standing than had been required previously. Clark continued physical therapy through November 7, 1996.

On May 2 and 15, 1997, Clark saw Michael P. Emery, Ph.D., for an evaluation. His main complaint was "constant neck pain" which had continued to increase in severity since the accident on December 13, 1990. Clark also complained of fatigue, memory loss, and radiating numbness across his shoulders and arms. Dr. Emery diagnosed a pain disorder associated with both psychological factors and general medical consider-

ations. He recommended a pain clinic approach and was of the opinion that Clark had a twenty percent disability based on psychological variables alone. Dr. Emery attributed this to Clark making compromises in his job, pain sufficient that he could not go back to supervisory work, loss of pleasure and confidence with the job due to concern over his performance, loss of pleasure and recreation, loss of libido, and general physical discomfort.

Both parties agreed that Clark should see Thomas G. Schemmel, a psychiatrist. Dr. Schemmel found no evidence of clinical depression but acknowledged that Clark was discouraged and depressed at times and was in pain from his degenerative spine disease. Dr. Schemmel concluded that there was no evidence of any psychiatric illness related to the injury on December 13, 1990.

The Referee concluded that (1) Clark was entitled to the trial use of a hospital bed, (2) Clark was not entitled to permanent partial impairment benefits for the December 13, 1990, industrial injury, and (3) the issue of whether the Commission should retain jurisdiction over the entitlement benefits was moot. The Industrial Commission approved the Referee's findings and conclusions. Clark appealed.

## II.

### STANDARD OF REVIEW

■ "In any review of a decision by the Industrial Commission, the Court will review questions of fact only to determine whether substantial and competent evidence supports the Commission's findings and will exercise free review over questions of law." *Ogden v. Thompson,* 128 Idaho 87, 88, 910 P.2d 759, 760 (1996) (citations omitted). Substantial and competent evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Idaho State Ins. Fund v. Hunnicutt,* 110 Idaho 257, 260, 715 P.2d 927, 930 (1985) (quoting *Consolidated Edison Co. v. National Labor Relations Board,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126, 140 (1938)).

■ This Court limits the scope of the review to questions of law and determinations of whether the Industrial Commission's findings of fact are supported by substantial, competent evidence. Idaho Const. Art. V. § 9; I.C. § 72-732. The Court will not disturb the Commission's conclusions on the weight and credibility of the evidence unless they are clearly erroneous. *Boley v. State, Industrial Special Indemnity Fund,* 130 Idaho 278, 939 P.2d 854 (1997).

## III.

### THERE IS SUBSTANTIAL, COMPETENT EVIDENCE TO SUPPORT THE INDUSTRIAL COMMISSION'S FINDING THAT CLARK WAS NOT ENTITLED TO PERMANENT PARTIAL IMPAIRMENT BENEFITS AS A RESULT OF THE ACCIDENT ON DECEMBER 13, 1990.

■ The Commission relied on *Urry v. Walker & Fox Masonry Contractors,* 115 Idaho 750, 769 P.2d 1122 (1989), to determine the meaning of "permanent impairment." In *Urry* the Court ruled the Commission is the ultimate evaluator of impairment. The Court also noted that "the opinions of an expert, whether given by direct testimony, or by way of written report, are not binding upon the trier of the facts, but are advisory only." *Urry,* 115 Idaho at 756, 769 P.2d at 1128 (quoting *Graves v. American Smelting & Refining Co.,* 87 Idaho 451, 455, 394 P.2d 290, 293 (1964)). The Commission can accept the opinion of the physician regarding impairment but is not required to do so. *Nelson v. David L. Hill Logging,* 124 Idaho 855, 865 P.2d 946 (1993). In this case the Commission based its decision on the following findings:

Drs. Alyea and Clark, in their April 18, 1995, IME, determined that there was no assignable impairment of Clark. This was ascertained by utilizing the AMA Guides to the Evaluation of Permanent Impairment, fourth edition, which was strictly ascribable to the December 13, 1990 injury of Clark.

Dr. Emery then concluded Clark had a twenty percent psychological impairment

rating based on psychological variables alone, fifteen percent which is apportioned to the related injury. Dr. Emery acknowledged the apportionment was arbitrary, and that the interpretation of orthopedic and general medical findings was outside his expertise. Dr. Emery attributed the rating to the effects of Clark's ongoing chronic neck pain. The Referee noted that Dr. Emery was not provided with Clark's complete medical records prior to his evaluation, and that Clark's neck pain predates the December 13, 1990, injury.

Dr. Schemmel's conclusions were to the contrary. Dr. Schemmel found no evidence of any psychiatric illness related to Clark's December 13, 1990, injury. Dr. Schemmel also noted that Clark had a zero percent impairment due to mental or behavioral disorders based on the AMA Guides to the Evaluation of Permanent Impairment, fourth edition.

Clark contends that the Commission erred in finding no permanent impairment, because it failed to apply the factors set forth in the statute to evaluate such an impairment. Clark argues that the Commission did not factor in the element of personal efficiency in the activities of daily living such as self-care, communications, and normal living postures as provided by I.C. § 72–424. Clark also maintains that there is an inconsistency between the Commission's determination of no permanent impairment and the approval of the trial use of a hospital bed.

There is clearly evidence to support the finding that there was no permanent impairment from the December 13, 1990, accident. The opinions of Drs. Alyea, Clark and Schemmel support the Commission's determination. Clark argues that the award of temporary use of a hospital bed is inconsistent with the determination that there was no permanent impairment from the accident in issue. There is no finding that the award of the temporary use of the hospital bed is the result of a permanent impairment from the accident. The award of the hospital bed is not inconsistent with the finding that Clark suffered no permanent impairment from the December 13, 1990, accident.

## IV.

## THE INDUSTRIAL COMMISSION DID NOT ERR IN FAILING TO RETAIN JURISDICTION.

The Commission did not retain jurisdiction because a permanent impairment rating was not awarded, rendering the question of retained jurisdiction moot. Consequently, the Commission was correct in not retaining jurisdiction.

## V.

## CONCLUSION

The Industrial Commission's decision is affirmed. Costs are awarded to the City of Lewiston.

Chief Justice TROUT and Justices SILAK, WALTERS and KIDWELL concur.