778 P.2d 731

Kenneth W. CAMPBELL,
Claimant-appellant-cross
respondent,

v.

KEY MILLWORK & CABINET COMPA-
NY, Employer, and Argonaut North-
west Insurance Company, Surety, De-
fendants-respondents-cross appellants.

No. 17574.

Supreme Court of Idaho.

July 31, 1989.

John F. Greenfield, Boise, argued for claimant-appellant-cross respondent.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for defendants-respondents-cross appellants. Denise C. Baird and Thomas V. Munson argued.

BAKES, Chief Justice.

Claimant Campbell appeals from a decision and award of the Industrial Commission and the employer/surety cross appeals. The Commission found that Campbell had suffered a compensable industrial accident and awarded both temporary total disability benefits and permanent partial disability benefits based on a rating of 20% of the whole man disability. The Commission denied Campbell retraining benefits and some of the temporary disability benefits he requested. The Commission also awarded Campbell attorney fees because the employer and surety unreasonably withheld the temporary benefits he was entitled to.

Campbell appeals the denial of retraining benefits, the rejected portion of his claim for total temporary disability, and the inadequacy of his 20% of the whole man permanent disability rating. The employer and the surety have cross appealed from the Commission's exercise of jurisdiction in entering a revised findings, conclusions and order, and from the award of attorney fees against the employer and surety. Because

of several errors, we reverse the order of the Industrial Commission and remand for a new hearing on all issues.

Appellant Campbell, a 41–year–old carpenter, began working for the employer, Key Millwork & Cabinet Company (Key), in the spring of 1982. On November 5, 1982, Campbell slipped while descending a staircase and suffered an industrial accident which caused a temporary injury to his lower back. Campbell sought treatment from a chiropractor, and by mid-November, 1982, Campbell was back at work with no more complaints of back pain. The Industrial Commission found that Campbell was only temporarily disabled from the November 5, 1982, accident, and that those injuries had been completely "resolved" without any permanent impairment or disability. Those findings are not contested on appeal.

Campbell continued his employment with Key until the spring of 1984, at which time his employment with Key terminated. He was re-employed by Key from the early fall of 1984 until December 13, 1984, at which time his employment with Key again terminated. He was unemployed from December, 1984, until May, 1985, at which time he became employed with a different employer for whom he had worked in years past. In August, 1985, Campbell again was re-employed by Key, but only for 2½ weeks, at which time he again was terminated by Key because there was not enough work for him. At that time claimant informed Key that if work would be available to him for only a few weeks at a time that he did not want Key to call him further. Between September, 1985, and January, 1986, Campbell worked for three other employers in various capacities.

On March 24, 1986, Key contacted Campbell to return to work at its cabinet business. He agreed and worked for two days, until March 26, 1986, at which time Campbell injured his lower back while unloading a truckload of cabinets at a jobsite in Ontario, Oregon. Campbell advised his employer of the incident, but continued to work for approximately 10 days, and then sought treatment from a chiropractor, Dr.

David Price. Campbell continued to work until April 16, 1986, when his left leg and foot became numb. Campbell did not return to work for Key after April 16, 1986.

During April, 1986, Campbell was treated by an orthopedic surgeon, Dr. Jeffrey Hessing, M.D. Dr. Hessing testified that Campbell was suffering from a musculo ligamentis strain as a result of the March 26, 1986, accident. Dr. Hessing also examined X-rays taken by a chiropractor in the spring of 1982, before Campbell had suffered either of his two industrial accidents. He concluded that Campbell suffered from a degenerative disc disease with facet changes, and that this disease pre-existed both of his industrial accidents. Dr. Hessing treated Campbell conservatively, prescribed physical therapy, and advised Campbell to cease heavy labor because of his degenerative disc disease. Dr. Hessing imposed lifting, bending and twisting restrictions on Campbell, but released him for work on September 4, 1986, after determining that his patient was stable and had suffered a 3% of the whole man permanent impairment rating. Dr. Hessing apportioned the impairment rating 50% to the pre-existing degenerative disc disease, and 50% to the March 26, 1986, industrial injury. Dr. Hessing believed that claimant could return to work in his usual occupation, and that claimant's restrictions would ease once he returned to work.

In October, 1986, and January, 1987, Dr. John G. Bishop, M.D., examined Campbell and concurred with Dr. Hessing's 3% permanent physical impairment rating. Thereafter, in February, 1987, Campbell sought an examination from Dr. Paul Collins, an orthopedic surgeon, regarding pain in his back and left leg. Dr. Collins acknowledged that claimant had a pre-existing degenerative disc condition and opined that the industrial accident on March 26, 1986, had aggravated this condition. Dr. Collins placed Campbell back on intensive physical therapy at St. Alphonsus Physical Therapy Institute from February, 1987, through the end of August, 1987, at which time he determined that Campbell was stable. Dr. Collins assigned an impairment rating of 12% of the whole man to Campbell and

stated that he could not apportion the rating between the pre-existing condition and the March 26, 1986, industrial injury.

At the surety's request an independent medical panel evaluated Campbell and concluded that he had degenerative disc disease and foraminal changes prior to either of his industrial accidents. The Commission found that "the panel physicians felt claimant had no permanent physical impairment due to the industrial accident and injury but thought Dr. Hessing's 3% rating with 50–50 split to be 'reasonable'. The panel concluded, and the Commission found, that *"[a]ny restrictions would not be related to the industrial injury but due to degenerative disc disease."*

One of the members of the independent medical panel which examined Campbell was Dr. Charles Boge, M.D., who examined claimant on June 23, 1987. The Commission specifically found that Dr. Boge's testimony was the most reasonable and persuasive. Dr. Boge found that (1) Campbell's degenerative disease predated the November 5, 1982, industrial accident, and that neither of the accident/injuries aggravated claimant's foraminal stenosis; (2) that claimant has referred pain in his left leg, not radicular pain (because there is no evidence of nerve root compromise); and (3) that Campbell had a sprain/strain of the soft tissue in his low back from the March 26, 1986, industrial accident which is healed but could have temporarily aggravated claimant's degenerative disc disease. Dr. Boge gave Campbell a 10% whole man permanent physical impairment rating, apportioning 80% of that to his degenerative disc disease and 20% to the industrial injury. Further, in Dr. Boge's opinion, claimant's lifting, twisting and bending restrictions were based on his degenerative disease.

Two vocational rehabilitation consultants testified favorably for Campbell concerning his ability and desire to be retrained for employment which would fit within the bending, lifting and twisting restrictions which all doctors had agreed claimant should limit himself to.

The Industrial Commission conducted two hearings in this matter. The first was conducted by a referee who made the recommended findings of fact, conclusions of law and order to the Commission which the Commission unanimously approved. In those findings of fact and conclusions of law the Commission held: (1) that the claimant had suffered an industrial accident and compensable injury on March 26, 1986; (2) that the claimant's total temporary disability should have been computed under I.C. § 72–419(4)(b) rather than subsection (a) as the employer had argued, resulting in a larger award to the claimant than that tendered by the employer/surety; however, the Commission found that there was a legitimate dispute over which of those two subsections applied to the claimant and therefore the employer and surety had not acted unreasonably in defending the claim and therefore were not liable for an award of attorney fees under I.C. § 72–804; (3) that claimant's condition was stable from September 4, 1986, through February 13, 1987, and therefore the employer was not liable for total temporary disability during that period; (4) that after applying non-medical factors claimant had a permanent physical disability as a result of the industrial accident amounting to 17% of the whole man; (5) that claimant was not entitled to retraining benefits because claimant's need for retraining was not due to his industrial accident and injury, but was caused by the lifting, bending and twisting restrictions which "are not due to claimant's soft tissue injury or a temporary aggravation of the pre-existing degenerative changes in his spine; rather, they are caused by the degenerative changes themselves."

Both parties filed petitions for rehearing which were denied without hearing by an order of the Commission dated January 29, 1988. Nevertheless, on February 1, 1988, the attorney for the claimant Campbell wrote a letter to the chairman of the Industrial Commission complaining of the Commission's denial of the petition for rehearing without conducting a hearing. As a result of that letter, and without withdrawing their January 29, 1988, order denying a rehearing, the Commission nevertheless held a hearing on March 30, 1988, in which

the commissioners themselves heard oral argument and considered the briefs filed by the parties. On April 27, 1988, the Commission entered its revised findings of fact, conclusions of law and order on reconsideration, signed by two of the commissioners.[1]

In its revised findings of fact, conclusions of law and order on reconsideration, the Commission changed its disposition of the case somewhat from its earlier findings of fact. In the revised order: (1) the Commission again found that claimant suffered a compensable industrial accident and injury as a result of the March 26, 1986, accident; (2) the Commission reaffirmed its original analysis that total temporary disability payments should have been computed under I.C. § 72–419(4)(b), but reversed itself and concluded that the surety's failure to calculate the total temporary disability benefits under subsection (b), rather than subsection (a), of I.C. § 72–419(4) was unreasonable and therefore the claimant was entitled to an award of attorney fees under I.C. § 72–804; (3) the Commission increased the claimant's permanent partial disability from 17% to 20% of the whole man; (4) the Commission reaffirmed its denial of retraining benefits because it again found that the restrictions which required the claimant's need for rehabilitation benefits "are related to claimant's degenerative disc disease and foraminal stenosis, not the musculoligamentis strain or temporary aggravation of his degenerative disc disease he experienced in his industrial accident"; (5) the Commission affirmed its original determination that claimant was stable between September 4, 1986, and February 13, 1987, and therefore claimant was not entitled to temporary total disability benefits during that period.

Although the employer and surety participated in the March 30, 1987, rehearing argument before the Industrial Commission, they did not raise before the Commission the claim they now make before this Court that the Commission was without jurisdiction to reconsider its decision after it entered its original order denying rehearing on January 29, 1987. Rather, the employer and surety raise for the first time in this appeal the claim that the Commission had no jurisdiction to reconsider its original December 23, 1987, findings of fact, conclusions of law and order after it entered its January 29, 1988, order denying the claimant's petition for rehearing.

■ The authority of the Industrial Commission to reconsider its decisions is not analogous to the limitations imposed upon the trial courts by I.R.C.P. 59 and 60. Both I.C. §§ 72–718 and 72–719 authorize the Commission to reconsider its decisions on its own motion upon the showing set out in those statutes. For instance, under I.C. § 72–719(3), on its own motion, the Industrial Commission "may review a case in order to correct a manifest injustice." *See Banzhaf v. Carnation Co.*, 104 Idaho 700, 662 P.2d 1144 (1983); *Sines v. Appel*, 103 Idaho 9, 644 P.2d 331 (1982). Under *Sines* "manifest injustice" is to be given broad construction. Here the employer and surety did not raise the issue of the Commission's statutory authority to reconsider as provided in I.C. §§ 72–718 and 72–719 in the hearing before the Commission. Having failed to raise the issue before the Commission where the appropriate record could have been made, and having participated in those proceedings before the Commission, the employer/surety will not now be heard to claim that the statutory authority under I.C. §§ 72–718 and –719 was not present for the Commission to reconsider its decision. *See Egus v. Triumph Min. Co.*, 71 Idaho 354, 232 P.2d 136 (1951) (appellant filed no objection to setting of hearing; therefore, no error found).

Appellant Campbell raises several claims of error in the Commission's revised findings of fact and conclusions of law. Particularly, Campbell alleges that there are significant inconsistencies in the Commission's treatment of the denial of retraining bene-

---

1. While the record does not disclose why only two of the commissioners signed the order on rehearing, even though three of them participated in the rehearing proceeding, it has been suggested that the failure of a commissioner to sign an order generally means that the commissioner does not agree with the action of the Commission.

fits and the Commission's factual findings and conclusions of law regarding apportioning the claimant's impairment and restrictions between the pre-existing degenerative disc disease and the industrial injury. Campbell also alleges error in the failure of the Commission to award total temporary disability compensation between September 4, 1986, and February 13, 1987, and the inadequacy of the 20% permanent partial disability awarded in the revised findings.

■ We first address claimant's argument that the Commission erred in denying him retraining benefits. If Campbell is correct that the Commission erred in this regard, then other parts of the Commission's order relating to the amount of the award for permanent partial disability are also affected. I.C. § 72–450 states that during the period of retraining "the employer shall continue to pay the disabled employee, as a subsistence benefit, temporary total or temporary partial disability benefits as the case may be." It is only *after* the retraining is completed that the employee is to be rated for permanent disability. Accordingly, if the Commission erred in analyzing the claim for retraining benefits, it could affect the permanent disability award as well.

We conclude that the Commission committed certain errors of law, and entered conflicting findings of fact regarding the award of retraining benefits, and we reverse the Commission's April 27, 1988, revised order and remand for a new hearing and entry of new findings of fact, conclusions of law and order. First, the Commission found in Revised Finding of Fact XVI that claimant's "restrictions are *not due* to Claimant's soft tissue injury or the temporary aggravation of the preexisting degenerative changes in his spine; rather, they are *caused by* the degenerative changes themselves." The Commission then found in Revised Finding of Fact XVI, and repeated again in Conclusion of Law III, that "[a]s Claimant's inability to return to his preinjury employment is not caused by his industrial accident and injury, or the said accident and injury 'lighting up' his under-

lying disease, retraining benefits are not appropriate." However, that finding is inconsistent with the Commission's Revised Finding of Fact X which concerns the testimony of Dr. Boge who "gave claimant a 10% whole man permanent physical impairment apportioning 80% to the degenerative disc disease and 20% to the industrial injury." In Revised Finding of Fact XVII, the Commission found Dr. Boge's testimony to be "the most reasonable and persuasive." By approving and adopting Dr. Boge's testimony, the Commission has, in effect, found that 20% of claimant's 10% impairment (or 2%) was caused by the industrial accident.

The Commission's Revised Finding of Fact XVII appears to be inconsistent with both Revised Findings of Fact XVI and X. In Revised Finding of Fact XVII, the Commission concluded that "all of the permanent physical impairment is attributable to the industrial injury and is not apportionable as Claimant's preexisting condition was not a hindrance or obstacle to obtaining employment prior to the March 26, 1986, event." The factual portion of that finding is inconsistent with the factual portions of Revised Findings of Fact XVI and X regarding whether the impairment was attributable to the industrial injury rather than the pre-existing condition.

■ Additionally, Revised Finding of Fact XVII contains an erroneous statement of law. Apportionment between industrial injuries and pre-existing physical impairments under I.C. § 72–406 does not depend upon the pre-existing condition being a "hindrance or obstacle" to obtaining employment. *Horton v. Garrett Freightlines, Inc.*, 115 Idaho 912, 772 P.2d 119 (1989) (*Horton II*). At the time the legislature adopted the new worker's compensation law in 1971, the apportionment statute, I.C. § 72–406(1), did not contain any requirement that a claimant's pre-existing condition constitute a hindrance or obstacle to obtaining employment in order to apportion that pre-existing impairment under I.C. § 72–406. However, I.C. § 72–332, which was also contained in the 1971 recodification of the worker's compensation law, and

which was the section dealing with apportionment to the Industrial Special Indemnity Fund in cases of permanent total disability, did contain the "hindrance or obstacle" requirement. Under I.C. § 72–332(2), in order for a pre-existing permanent physical impairment in total disability cases to be apportionable to the Industrial Special Indemnity Fund, the pre-existing permanent physical impairment had to be "of such seriousness as to constitute a hindrance or obstacle to obtaining employment...." In 1971 it was arguable that the I.C. § 72–332(2) definition of "permanent physical impairment," which required the impairment to constitute a "hindrance or obstacle," also applied to apportionable permanent physical impairments under I.C. § 72–406, because I.C. § 72–332(2) said the definition of "permanent physical impairment" therein applied, "[a]s used in this *law," i.e.,* the entire Workmen's Compensation Law, including I.C. § 72–406. (Emphasis added.) Thus it could be argued that subsequent to 1971 a pre-existing permanent physical impairment under either I.C. § 72–406 or I.C. § 72–332 had to "constitute a hindrance or obstacle to obtaining employment" before it was apportionable under either of those two statutes.

However, in 1978, the legislature repealed I.C. § 72–332(2), eliminating the definition of "permanent physical impairment" which required a showing that the impairment is "of such seriousness as to constitute a hindrance or obstacle to obtaining employment...." Subsequently, in 1981, the legislature reenacted a new subsection (2) to I.C. § 72–332 defining "permanent physical impairment" by referring to the definition in I.C. § 72–422, but again providing that "as used in this *section* [I.C. § 72–332] such impairment must be a permanent condition, whether congenital or due to injury or disease, of such seriousness as to constitute a hindrance or obstacle to obtaining employment...." (Emphasis added.) When the legislature returned the "hindrance or obstacle" limitation to the definition of permanent physical impairment in I.C. § 72–332(2), it specifically limited that definition to "this *section [72–332]"* rather than "this *law"* as was

originally contained in I.C. § 72–332(2) as enacted in 1971. Accordingly, as we recently held in *Horton v. Garrett Freightlines, Inc.,* 115 Idaho 912, 772 P.2d 119 (1989) (*Horton II*), while a pre-existing permanent physical impairment must constitute a hindrance or obstacle to obtaining employment or re-employment in order to be apportionable to the Industrial Special Indemnity Fund in a 100% disability case under I.C. § 72–332, it need not be a hindrance or obstacle to obtaining employment or re-employment to constitute an apportionable pre-existing physical impairment in cases less than total under I.C. § 72–406(1). Therefore, the Commission erred as a matter of law in that part of Revised Finding of Fact XVII when it concluded that *"all* of the permanent physical impairment is attributable to the industrial injury and is not apportionable as Claimant's preexisting condition was not a hindrance or obstacle to obtaining employment prior to the March 26, 1986 event." (Emphasis added.) Not only is that statement an erroneous interpretation of I.C. § 72–406(1), it is inconsistent with the testimony of Dr. Boge, which the Commission found the most "reasonable and persuasive." Dr. Boge apportioned only *20%* of the claimant's permanent physical impairment to the industrial injury. (*See* Revised Findings of Fact X and XVII; *but see* Revised Finding of Fact XVI which seemingly apportions *none* of the claimant's restrictions (impairment) to the industrial injury.)

■ Since the conflicts within the findings of fact, and the serious error of law concerning apportionment under I.C. § 72–406(1), go to the heart of the Commission's analysis in this case and affect all the Commission's determinations, it is our conclusion that the Commission's order should be set aside and the matter remanded to the Commission for a new hearing on all issues, except the award of attorney fees under I.C. § 72–804 which the Commission imposed in Revised Finding of Fact XIX and Conclusion of Law V, because the defendants acted unreasonably in determining claimant's total temporary disability

rate; we affirm the Commission's award of attorney fees.

Reversed and remanded. No costs or attorney fees awarded.

BISTLINE, HUNTLEY and JOHNSON, JJ., concur.

SHEPARD, J., sat but did not participate due to his untimely death.