896 P.2d 329

F. James SUND, Claimant–Appellant,

v.

Floyd GAMBREL dba Green Seasons Lawn & Landscape, Employer,

and

Industrial Indemnity Company and Northwest National Casualty Company, Defendants–Respondents.

No. 21262.

Supreme Court of Idaho,
Twin Falls, March 1995 Term.

June 2, 1995.

Kenneth L. Pedersen, Twin Falls, for appellant.

Hawley, Troxell, Ennis & Hawley, Boise, for respondent Indus. Indem. Kenneth C. Howell argued.

Bowen, Brassey, Gardner, Wetherell & Crawford, Boise, for respondent Northwest Nat. Cas. Eric S. Bailey argued.

TROUT, Justice.

James Sund appeals from a decision by the Industrial Commission (the Commission) finding that he suffered a five percent disability as a result of an industrial accident that occurred on September 4, 1989.

## I.

### BACKGROUND

On September 16, 1983, Sund suffered an acute lumbar disk herniation while working for Green Seasons Lawn and Landscape (Green Seasons). He was treated for this injury and evaluated by his physician, Dr. Howar, as having a permanent partial impairment of ten percent of the whole person as a result of the injury. Green Seasons' worker's compensation surety at that time was Industrial Indemnity Co. Sund and Industrial Indemnity entered into a compensation agreement which set Sund's level of physical *impairment* at ten percent of the whole person and awarded income benefits for a permanent partial *disability* of ten percent of the whole person. This agreement

was approved by the Industrial Commission in 1985.

Sund continued to work for Green Seasons following the 1983 injury. However, he was subject to restrictions on the amount he could lift and in the body positions he could accomplish. Sund testified that when he exceeded these physical restrictions, he would experience pain in his back. As a result, he began to work more in the administrative and design aspects of the landscaping business and performed less physical labor in the field. Beginning in May of 1989, Sund suffered more frequently from back pain, and in August of that year, he sought vocational counseling to explore the possibility of changing his line of work.

On September 4, 1989, Sund suffered a second work-related injury to his lower back. Prior to this incident, Sund had scheduled an appointment with Dr. Howar for September 6, 1989. Although there is some question as to whether he even mentioned the September 4 incident to Dr. Howar at this appointment, the doctor concluded that Sund was suffering from further physical limitations and referred him to a physical therapist. At the time of the second injury, Green Seasons had obtained worker's compensation insurance through Northwest National Casualty Company (Northwest).

## II.

### PROCEDURAL HISTORY

Sund attempted to re-open his claim with Industrial Indemnity for the 1983 injury by filing an application for hearing on August 27, 1990. He filed a second application against Northwest regarding the 1989 injury on September 25, 1990. The matter was submitted to a referee who conducted a hearing and made findings of fact, conclusions of law, and submitted a proposed order for adoption by the Commission. With regard to the 1983 injury, the referee found that Sund filed his application outside the period specified in I.C. §§ 72–706 and –719 and was precluded from recovering additional income benefits from Industrial Indemnity. However, Sund was entitled to certain medical benefits from Industrial Indemnity under I.C. § 72–433.

With regard to the 1989 injury, the referee found that on September 4, 1989, Sund suffered an injury resulting in an additional permanent physical *impairment* of five percent of the whole person. Thus, Sund's total permanent physical *impairment* was rated at fifteen percent of the whole person, considering both the 1983 and 1989 accidents. Sund's permanent *disability* was rated at thirty percent of the whole person. The referee found that most of Sund's medical restrictions and, therefore, his permanent *disability*, existed prior to the 1989 injury. Accordingly, the portion of the *disability* resulting from the 1989 injury was found not to exceed the physical *impairment* rating attributed to that injury (five percent). The remainder of the permanent *disability* (twenty-five percent) was found to have accrued prior to the 1989 injury.

The referee's findings of fact, conclusions of law, and proposed order were adopted by the Commission. Sund was awarded medical benefits in the amount of $986.00 to be paid by Industrial Indemnity. He was also awarded medical benefits totalling $617.00, income benefits for total temporary disability for a period of four weeks, and income benefits for permanent partial disability of five percent of the whole person relating to the September 4, 1989 injury, all to be paid by Northwest.

## III.

SUBSTANTIAL AND COMPETENT EVIDENCE SUPPORTS THE FINDING THAT ONLY FIVE PERCENT OF SUND'S TOTAL DISABILITY WAS CAUSED BY THE 1989 ACCIDENT

A determination by the Industrial Commission as to the degree of permanent disability resulting from an industrial injury is a factual question. *Thom v. Callahan,* 97 Idaho 151, 155, 540 P.2d 1330, 1334 (1975). As such, it will not be overturned on appeal when supported by substantial and competent, though conflicting, evidence. *See, e.g., Hutchinson v. J.R. Simplot Co.,* 98 Idaho 346, 563 P.2d 404 (1977). *See also* I.C. § 72–

732. In this case, we conclude that substantial and competent evidence supports the Commission's findings regarding Sund's level of disability.

■ The worker's compensation statutes make a clear distinction between the terms "permanent *impairment*" and "permanent *disability*." An "evaluation (rating) of permanent impairment" is a medical appraisal of the nature and extent of an industrial injury as it affects the employee's efficiency in the activities of daily living. I.C. § 72–424. An "evaluation (rating) of permanent *disability*," on the other hand, is an appraisal of the employee's present and probable future ability to engage in gainful activity as it is affected by (1) the medical factor of permanent impairment and (2) by pertinent non-medical factors set forth in I.C. § 72–430. I.C. § 72–425. *See also* I.C. §§ 72–422 and –423 for specific definitions of the terms "permanent impairment" and "permanent disability." Thus, a *disability* rating must include the level of medical *impairment*, but the medical *impairment* rating will not necessarily be the same as that for *disability*. *Fenich v. Boise Elks Lodge No. 310*, 106 Idaho 550, 553, 682 P.2d 91, 94 (1984).

With regard to the additional (non-medical) factors relevant to a determination of permanent disability, I.C. § 72–430(1) provides:

In determining percentages of permanent disabilities, account shall be taken of the nature of the physical disablement, the disfigurement if of a kind likely to handicap the employee in procuring or holding employment, the cumulative effect of multiple injuries, the occupation of the employee, and his age at the time of accident causing the injury, or manifestation of the occupational disease, consideration being given to the diminished ability of the af-

flicted employee to compete in an open labor market within a reasonable geographical area considering all the personal and economic circumstances of the employee, and other factors as the commission may deem relevant....

■ In this case, the Commission found that Sund had a total physical *impairment* of fifteen percent of the whole person following the 1989 injury, and that physical restrictions prevent him from working in jobs where he has considerable experience. Thus, he was found to have a permanent *disability* of thirty percent of the whole person. However, because most of his limitations existed prior to the 1989 injury, the portion of Sund's *disability* resulting from the 1989 injury was found not to exceed the portion of the physical *impairment* rating attributable to that injury (five percent of the whole person). The remainder of Sund's *disability* rating (twenty-five percent) accrued prior to the 1989 injury. Thus, Northwest was not liable for that portion.[1] Sund contends that this finding is unsupported by the evidence.

With regard to the non-medical factors relevant to Sund's level of disability, the following considerations support the Commission's findings. Sund was thirty-seven years old at the time of the second injury. Although he holds an associate degree in biology, his own expert testified that such a degree would be of limited utility in the job market. Finally, his past work experience and usable skills mainly involve physical labor. With regard to the medical factor of permanent impairment, the record reveals that at the time of the second injury, Sund was already subject to considerable physical restrictions which limited his ability to engage in hard physical labor. Indeed, concerns about these limitations led him to seek a change of profession prior to the 1989 injury.[2]

---

1. An employer (or its surety) is only liable for that amount of disability that is caused by the injury in question. I.C. § 72–406(1) provides:

In cases of permanent disability less than total, if the degree or duration of disability resulting from an industrial injury or occupational disease is increased or prolonged because of a preexisting physical impairment, the employer shall be liable only for the additional disability

from the industrial injury or occupational disease.

2. Sund testified that he sought vocational counseling solely because he recognized that at some point, he would no longer be able to engage in landscaping, and not because of any limitations existing at that time. He also argues that the simple fact that he was looking for other work does not, in and of itself, mean that he was

Sund argues that because his disability was determined to be ten percent in 1985, the additional twenty percent must therefore be attributable to the 1989 injury since there is no evidence to support a finding that his physical condition deteriorated between 1985 and 1989. This contention is meritless. Sund suffers from a *degenerative* back condition. There is substantial evidence that he experienced increasing problems with his back prior to September 4, 1989. In fact, Sund told his physical therapist that his pain was so severe on September *1,* 1989, three days prior to the occurrence of the second injury, that he was unable to get out of bed. This evidence, along with the non-medical factors enumerated above, provides clear support for the finding that the 1989 injury did *not significantly add to Sund's inability to* compete in the job market.

■ In sum, the focus of a determination of permanent *disability* is on the claimant's ability to engage in gainful activity. *Smith v. Payette County,* 105 Idaho 618, 621, 671 P.2d 1081, 1084 (1983). Given Sund's limited education and the fact that most of his usable skills involve physical labor, the major limiting factor on his ability to engage in gainful activity is his inability to engage in physical labor. This limitation was manifest and documented prior to the injury of September 4, 1989. Accordingly, the Commission's findings on this issue are affirmed.

## IV.

### A PRIOR AWARD OF DISABILITY BENEFITS DOES NOT PRECLUDE A SUBSEQUENT FINDING THAT A CLAIMANT'S DISABILITY RATING HAS ACTUALLY INCREASED

The compensation agreement entered into by Sund and Industrial Indemnity became an "award" by the Commission when it was approved in 1985. I.C. § 72–711. When an "award" has been made, I.C. § 72–718 provides that the "decision of the commission, in the absence of fraud, shall be final and conclusive as to all matters adjudicated." *See Fowler v. City of Rexburg,* 116 Idaho 1, 2, 773 P.2d 269, 270 (1989). Such "final and conclusive" awards cannot be modified for any reason unless modification is sought under I.C. § 72–719 within five years of the date of the accident causing the injury. *Id.* Sund contends that because the 1985 award is "final and conclusive" and cannot be modified, the Commission is precluded from finding that his level of disability increased between 1985 and September of 1989. According to Sund, all of the increase must therefore be attributed to the 1989 injury.

■ I.C. § 72–718 codifies a variation of the doctrine of *res judicata;* decisions by the Commission are conclusive only as to matters actually adjudicated, rather than as to all matters which could have been adjudicated. *Woodvine v. Triangle Dairy, Inc.,* 106 Idaho 716, 682 P.2d 1263 (1984). It follows that a compensation agreement approved by the Commission is *res judicata* only with respect to matters actually determined by that agreement. *Kindred v. Amalgamated Sugar Co.,* 114 Idaho 284, 756 P.2d 401 (1988).

■ In this case, the 1985 agreement is conclusive only with respect to Sund's level of disability *as it existed at the time the agreement was approved in 1985.* It could not, under § 72–718, be conclusive as to any subsequent increase in that rating since that was a matter that was not and could not be determined by the agreement. *Id.* With regard to § 72–719, that section provides a mechanism for a party, or the Commission, to seek a modification of a prior award based on a change of conditions or manifest injustice. However, it also provides that such modification must be sought within five years of the date of the accident causing the injury. Nothing in the provision precludes a subsequent factual determination that a claimant's

---

unable to continue in the landscaping business. While we agree that looking for other work is not dispositive, his history of medical problems and the fact that he was looking for other work at least gives rise to an inference that something about his landscaping job was physically bothering him. Furthermore, Sund's testimony about

the reasons he sought counseling conflicts with statements made by his vocational expert as well as other statements by Sund indicating that he was restricted in the type of work he could do, and that he suffered pain if he did certain activities that he had previously been able to do.

disability level actually increased following the injury that gave rise to a non-modifiable award. *See Carter v. Garrett Freightlines,* 105 Idaho 59, 665 P.2d 1069 (1983).

In short, the Commission found that Sund's disability increased from ten percent to a total of thirty percent. By finding that, of that total, only five percent was caused by the 1989 injury, the Commission effectively found that there was a change in circumstances following the approval of the compensation agreement in 1985, but prior to the second injury. This finding is not precluded by I.C. § 72–718 since it concerns a matter that was not determined by the 1985 agreement. Although the finding of increased disability could have been a basis for a modification of the prior award under § 72–719, there is no question that such modification was sought outside the period specified in that provision.

## V.

### SUND'S CLAIMS FOR DISABILITY BENEFITS AS AGAINST INDUSTRIAL INDEMNITY ARE BARRED BY I.C. § 72–719

Sund has named Industrial Indemnity as a respondent on appeal. However, he has not appealed from the determination regarding the amount of medical benefits owed by Industrial Indemnity and he makes no logical argument as to why his other claims against this defendant are not precluded by I.C. § 72–719.

As stated above, when the compensation agreement was approved by the Commission in 1985, it became a "final and conclusive" award as to the matters determined by that agreement. Since the agreement unambiguously determined Sund's level of permanent disability, I.C. § 72–719 provides the only basis for Sund to seek greater disability benefits based on the 1983 injury. *See Fowler,* at 2–3, 773 P.2d at 270–71. Section 72–719 states that a party seeking modification of a prior award based on a ·change of conditions must file an application within five years of the date of the accident causing the injury. In this case, Sund filed his application on August 27, 1990. This is clearly not within

five years of September 16, 1983, the date of the accident causing the injury. Accordingly, the claims for additional disability benefits against Industrial Indemnity are barred.

## VI.

### INDUSTRIAL INDEMNITY IS NOT ENTITLED TO ATTORNEY FEES

In light of the utter lack of foundation for its being named as a respondent on appeal, Industrial Indemnity requests an award of attorney fees. Although this request is inviting, we have held that we have no authority to award attorney fees against an unsuccessful worker's compensation claimant. *Swanson v. Kraft, Inc.,* 116 Idaho 315, 322, 775 P.2d 629, 636 (1989). Accordingly, Industrial Indemnity's request is denied.

## VII.

### CONCLUSION

The decision of the Industrial Commission is affirmed. Costs to respondents. No attorney fees on appeal.

McDEVITT, C.J., JOHNSON and SCHROEDER, JJ., and TRANSTRUM, J. (Pro Tem.), concur.