40 P.3d 91

William E. EACRET, Claimant–
Respondent,

v.

CLEARWATER FOREST INDUSTRIES,
Employer, and Liberty Northwest Insur-
ance Corporation, Surety, Defendants–
Appellants.

No. 26421.

Supreme Court of Idaho,
Lewiston, October 2001 Term.

Jan. 17, 2002.

Clements, Brown & McNichols, P.A., Lewiston, for appellants. Dean Wullenwaber argued.

Keeton & Tait, Lewiston, for respondent. John R. Tait argued.

EISMANN, Justice.

The employer Clearwater Forest Industries and its surety Liberty Northwest Insurance Corporation (herein both called "Clearwater") appeal the Industrial Commission's decision not to apportion, under Idaho Code § 72–406(1), the permanent disability of the claimant William E. Eacret (herein "Eacret") between the industrial accident and a preexisting physical impairment. We affirm the order of the Industrial Commission.

## I. FACTS AND PROCEDURAL HISTORY

On August 2, 1994, Eacret injured his back while carrying a sixteen-foot-long, 2x10 board during the course of his employment as a planer superintendent at a lumber mill owned by Clearwater. He finished his shift, but sought medical treatment the next day. After a period of conservative treatment, Eacret had back surgery at L4–5 and L5–S1 on November 1, 1994. Eacret received physical therapy following his surgery, and returned to work for Clearwater on March 10, 1995, although at a light duty job and at a lower rate of pay.

Eacret filed a workers' compensation complaint, which was heard on October 22, 1998. One of the issues raised by Clearwater was the apportionment of Eacret's disability pursuant to Idaho Code § 72–406(1). Eacret's

prior medical history included a two-week hospital stay (including traction) for a back problem in 1979, left-side low back pain in 1984, an upper-back problem in 1992, a lower-back problem in 1993, and three knee surgeries, the last of which was performed in 1993. Eacret began working for Clearwater in 1989.

Clearwater had a panel of two physicians, one of whom was an orthopedic surgeon, conduct an independent medical examination (herein "IME") of Eacret. In their report dated February 16, 1996, the two physicians stated that Eacret had not yet achieved maximum medical improvement. On April 17, 1996, the orthopedic surgeon on the panel sent Clearwater a letter in which he stated that after reviewing an MRI scan report dated March 3, 1996, he concluded that Eacret had attained maximum medical improvement and that in his opinion Eacret's permanent partial impairment was 10% of the whole person. The orthopedic surgeon also stated that no apportionment was indicated because, absent evidence to the contrary, all of Eacret's low back problems occurred while employed by Clearwater. On October 8, 1998, the orthopedic surgeon sent a second letter to Clearwater in which he stated that he had reviewed additional medical records of Eacret and that in his opinion Eacret had a 12% permanent partial impairment, with 5% apportioned to his preexisting condition, 5% apportioned to the industrial accident, and 2% apportioned to a physical assault upon Eacret that occurred at his place of employment after he returned to work. Clearwater offered the report and both letters into evidence at the hearing.

The evidence presented by Eacret included the post-hearing deposition of his family physician. When questioned about the opinions contained in the second letter from the orthopedic surgeon, Eacret's family physician stated that he could not express an opinion on the 12% permanent partial impairment and would assume that figure was correct. He then testified that assuming the 12% permanent partial impairment was accurate, he would probably rate 7% to 8% of that 12% (58% to 67% of the impairment) as being due to the industrial accident.

The referee found that Eacret had a permanent partial impairment of 10% and a permanent partial disability of 37%. The referee also found that Clearwater had failed to prove that Eacret's permanent disability should be apportioned under Idaho Code § 72–406(1). The Industrial Commission approved and adopted the findings of fact, conclusions of law, and recommendations of the referee and entered an appropriate order. Clearwater then appealed.

## II.  STANDARD OF REVIEW

When this Court reviews a decision of the Industrial Commission, it exercises free review over questions of law, but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings. *Rivas v. K.C. Logging,* 134 Idaho 603, 7 P.3d 212 (2000). Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. *Id.* Because the Commission is the fact finder, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous. *Id.* This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. *Id.* Whether a claimant has an impairment and the degree of permanent disability resulting from an industrial injury are questions of fact. *Id.*

## III.  ANALYSIS

Although it phrases the issue in several different ways, the sole issue raised by Clearwater on appeal is whether or not the Commission's findings regarding apportionment of the permanent disability are supported by substantial and competent evidence. Idaho Code § 72–406(1) absolves an employer from liability for that portion of a permanent partial disability that is due to a preexisting physical impairment. The statute provides as follows:

> In cases of permanent disability less than total, if the degree or duration of disability resulting from an industrial injury or occupational disease is increased or

prolonged because of a preexisting physical impairment, the employer shall be liable only for the additional disability from the industrial injury or occupational disease.

"Permanent impairment" is defined as "any anatomic or functional abnormality or loss after maximal medical rehabilitation has been achieved and which abnormality or loss, medically, is considered stable or nonprogressive at the time of evaluation." IDAHO CODE § 72–422 (1999). " 'Evaluation (rating) of permanent impairment' is a medical appraisal of the nature and extent of the injury or disease as it affects an injured employee's personal efficiency in the activities of daily living, such as self-care, communication, normal living postures, ambulation, elevation, traveling, and nonspecialized activities of bodily members." IDAHO CODE § 72–424 (1999). A preexisting permanent impairment need not be a hindrance or obstacle to obtaining employment or re-employment in order for it to be apportionable under Idaho Code § 72–406(1). *Campbell v. Key Millwork & Cabinet Co.*, 116 Idaho 609, 778 P.2d 731 (1989).

" 'Evaluation (rating) of permanent disability' is an appraisal of the injured employee's present and probable future ability to engage in gainful activity as it is affected by the medical factor of permanent impairment and by pertinent nonmedical factors as provided in section 72–430, Idaho Code." IDAHO CODE § 72–425 (1999). The nonmedical factors include the nature of the physical disablement; the cumulative effect of multiple injuries; the claimant's occupation; the claimant's age at the time of the accident causing the injury; the claimant's diminished ability, if any, to compete in an open labor market within a reasonable geographical area considering the claimant's personal and economic circumstances; and any other factors that the Commission deems are relevant. IDAHO CODE § 72–430 (1999).

■ In order to obtain apportionment pursuant to Idaho Code § 72–406, the employer must prove that the degree or duration of the claimant's disability resulting from an industrial injury or occupational disease was increased or prolonged because of a preexisting physical impairment. There is a clear distinction between permanent impairment and permanent disability. *Sund v. Gambrel*, 127 Idaho 3, 896 P.2d 329 (1995). A disability rating must include the level of medical impairment, but the medical impairment rating will not necessarily be the same as that for disability. *Id.* Although permanent impairment is a medical factor, the Commission is not bound by opinions of medical experts, but such opinions are advisory only. *Nelson v. David L. Hill Logging*, 124 Idaho 855, 865 P.2d 946 (1993); *Urry v. Walker and Fox Masonry Contractors*, 115 Idaho 750, 769 P.2d 1122 (1989).

■ As stated above, Clearwater's medical expert Dr. Knoebel wrote a letter dated October 8, 1998, in which he expressed his opinion that Eacret had a 12% permanent partial impairment, with 5% apportioned to his preexisting condition, 5% apportioned to the industrial accident, and 2% apportioned to a co-worker's physical assault upon Eacret that occurred after he returned to work. The Commission rejected the opinion expressed by Dr. Knoebel in this letter. It explained its reasoning for doing so as follows:

> The Referee is not persuaded that apportionment of impairment is warranted in this case. Dr. Knoebel's October 8, 1998, letter provides no foundation for his opinion that Claimant's "... 3 previous incidents with low back pain requiring medical attention" resulted in either restrictions or impairment. Dr. Knoebel does not distinguish between the three previous incidents, but merely groups the three together to arrive at a 5% rating. Dr. Knoebel did not review any medical records regarding Claimant's two-week hospitalization in 1979. Nor does Dr. Knoebel explain in his letter the methodology utilized in arriving at the 5% figure. Finally, Dr. Knoebel does not acknowledge that at the time of his August 2, 1994, accident Claimant was performing relatively heavy work without apparent difficulty.

In a footnote to the above-quoted paragraph, the Commission stated, "Dr. Knoebel did not testify either at the hearing or by way of

deposition and was thus unable to clarify the opinions expressed in his report and letters."

■ The Industrial Commission, as the factfinder, is free to determine the weight to be given to the testimony of a medical expert. *Rivas v. K.C. Logging,* 134 Idaho 603, 7 P.3d 212 (2000). The Commission can accept or reject the opinion of a physician regarding impairment. *Clark v. City of Lewiston,* 133 Idaho 723, 992 P.2d 172 (1999). We will not disturb the Commission's conclusions as to the weight and credibility of expert testimony unless such conclusions are clearly erroneous. *Reiher v. American Fine Foods,* 126 Idaho 58, 878 P.2d 757 (1994). When deciding the weight to be given an expert opinion, the Commission can certainly consider whether the expert's reasoning and methodology has been sufficiently disclosed and whether or not the opinion takes into consideration all relevant facts. In this case, we cannot find that it was clearly erroneous for the Commission not to give any weight to the opinions expressed by Dr. Knoebel in his letter dated October 8, 1998.

■ Even though the Commission rejected Dr. Knoebel's opinion stated in his second letter dated October 8, 1998, it accepted his opinion stated in his first letter dated April 17, 1996. Based upon the IME report and Dr. Knoebel's first letter, the Commission found that Eacret had a 10% partial impairment of the whole person that was attributable solely to his August 2, 1994, industrial accident. Clearwater argues on appeal that Dr. Knoebel's opinion expressed in his first letter cannot constitute substantial and competent evidence because it was a preliminary opinion that was based upon less than all of the facts.

On January 3, 1996, Clearwater sent Dr. Knoebel a letter asking for his opinion on various issues, including issues relating to apportionment based upon a preexisting condition. Those questions included the following:

4. Is there any preexisting or other condition which is not related to the industrial incident which is hindering this patient's recovery? If so, please explain.

5. If there is a preexisting [sic], or a condition unrelated to the August 2, 1994, incident, do you feel the accepted condition has returned to pre-injury status?

. . .

8. If the condition is fixed and stable, has the patient sustained any permanent partial impairment as a direct result from the industrial injury of August 2, 1994? If so, please provide me with this information as a percentage as instructed in the AMA Guidelines for Determination of Permanent Impairment, Fourth Edition. Please segregate any unrelated or preexisting conditions.

9. Is the patient capable of returning to his regular described work requirements? If not, please advise me as to what limitations or restrictions would apply and if in your opinion these would be permanent or temporary in nature? If temporary, for how long.

10. Are any restrictions addressed in the above question the result of a preexisting or unrelated condition? If so, please segregate the restrictions imposed due to each condition.

The letter contained a two-page summary of Eacret's prior medical history, the industrial accident, and his post-accident medical history. Enclosed were various medical records that Clearwater apparently believed were sufficient to answer the questions asked. Based upon the records and information provided by Clearwater and his examination of Eacret, Dr. Knoebel issued a written report dated February 16, 1996.

Dr. Knoebel was later provided with an MRI scan report dated March 29, 1996. Based upon that report, he wrote his letter dated April 17, 1996, in which he expressed the opinion that no apportionment was indicated. Clearwater then offered that letter into evidence, without any limitation as to the purpose for which it was offered. Dr. Knoebel's opinion as expressed in that letter constitutes substantial and competent evidence upon which the Commission could base its determination that no apportionment under Idaho Code § 72–406 had been proven by Clearwater. Although there is certainly evi-

dence from which the Commission could have reached a different conclusion, it is the role of the Commission, not this Court, to weigh the evidence. *Dinius v. Loving Care and More, Inc.*, 133 Idaho 572, 990 P.2d 738 (1999).

 Eacret requests attorney fees on appeal pursuant to Idaho Code § 72–804. Clearwater has characterized the issue before this Court as one of law. However, the issue is actually one of fact, that is, whether there was substantial, competent evidence to support the Commission's finding. Attorney fees and costs are properly awarded when an appeal asks this Court to do nothing more than reweigh the evidence submitted to the Commission. *Duncan v. Navajo Trucking*, 134 Idaho 202, 998 P.2d 1115 (2000). Such is the case here. Attorney fees pursuant to Idaho Code § 72–804 and costs are awarded to Eacret on appeal.

## IV. CONCLUSION

The order of the Commission is affirmed. Costs, including attorney fees, are awarded to the respondent.

Chief Justice TROUT, and Justices SCHROEDER, WALTERS and KIDWELL CONCUR.