EISMANN, Justice.
This is an appeal from a decision of the Industrial Commission finding that the claimant had failed to prove that the heart attack he suffered while at work was an industrial accident because his cardiologist could not determine whether the plaque rupture that caused the heart attack was triggered by events occurring before or after the claimant arrived at work. We hold that the Commission’s findings of fact are not clearly erroneous and affirm its order denying compensation.
I.
Factual Background.
On November 15, 2009, Joseph Henry (Mr. Henry) suffered a heart attack shortly after arriving at his place of employment with the Idaho Department of Correction where he worked as a prison guard. He was transported by ambulance to the hospital and was diagnosed by a cardiologist as having an “acute posterolateral myocardial infarction due to a blockage of the right circumflex obtuse marginal artery.” The cardiologist performed emergency surgery to place a stent in the occluded artery. Ten days later, Mr. Henry suffered another cardiac event while undergoing a cardiac stress test, and the following day he underwent triple bypass surgery.
In April 2010, Mr. Henry filed a complaint with the Industrial Commission in which he contended that his heart attack on November 15, 2009, constituted an industrial accident. He also contended that the triple bypass surgery was related to the heart attack and that his heart attack exacerbated his preexisting anxiety disorder, rendering him totally and permanently disabled.
The parties had an evidentiary hearing, before a referee, and on June 24, 2011, the referee issued proposed findings of fact and conclusions of law that Mr. Henry had failed to prove that his employment caused or contributed to his heart attack. The Commission adopted the referee’s proposed findings and conclusions and issued an order that Mr. Henry had failed to prove he suffered an industrial accident. Mr. Henry then timely appealed.
II.
Did the Industrial Commission Apply the Wrong Burden of Proof as to Causation?
The issue in this case was the cause of Mr. Henry’s heart attack. It is undisputed that he had preexisting medical conditions and activities that increased the likelihood that he would suffer a heart attack. His preexisting condition certainly would not preclude him from being awarded benefits under the worker’s compensation law. “Compensation is recoverable where an employee’s work ... causes an accident which aggravates or accelerates a previous disease condition of the employee, and an employee must establish his employment caused or contributed to his injury — here the myocardial infarction.” Horner v. Ponderosa Pine Logging, 107 Idaho 1111, 1114, 695 P.2d 1250, 1253 (1985). *145 Mr. Henry argues that the Commission misapplied the law by requiring him to prove that his industrial accident was the sole cause of his heart attack and that his preexisting conditions were not a cause. As will be shown when discussing the sufficiency of the evidence to support the Commission’s conclusion, Mr. Henry’s assertion is incorrect. The Commission did not require that Mr. Henry prove that his heart attack was caused solely or even primarily by his employment. Rather, it found that he “failed to establish to a reasonable medical probability that his heart attack was triggered by his activities at work on November 15,2009.”
III.
Are the Commission’s Findings of Fact Supported by Substantial and Competent Evidence?
“When this Court reviews a decision of the Industrial Commission, it exercises free review over questions of law, but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission’s findings.” Eacret v. Clearwater Forest Indus., 136 Idaho 733, 735, 40 P.3d 91, 93 (2002). Substantial and competent evidence is relevant evidence that a reasonable mind might accept to support a conclusion. Id. Because the Commission is the finder of fact, its conclusions on the credibility and weight of the evidence will not be disturbed on appeal unless they are clearly erroneous. Id. This Court does not weigh the evidence or consider whether it would have reached a different conclusion from the evidence presented. Id. Whether the Commission correctly applied the law to the facts is an issue of law over which we exercise free review. Combes v. State, Indus. Special Indem. Fund, 130 Idaho 430, 432, 942 P.2d 554, 556 (1997).
It is undisputed that prior to his heart attack, Mr. Henry had preexisting medical conditions that increased his risk of a heart attack. At the time of the heart attack, Mr. Henry was 54 years of age. He had suffered from chronic anxiety for about 14 years, and in 2004 he had been instructed to resume taking medication for hypertension that he had been prescribed in 2003. In 2001 he was diagnosed with sleep apnea and was subsequently prescribed a C-Pap device. In 2004 he was diagnosed -with hypercholesterolemia with a total cholesterol level of 298; he was prescribed medication for that condition in 2006; and he had a cholesterol level of 328 on March 21, 2008. At the time of his heart attack, he had been smoking cigarettes for about 38 years and was smoking one and one-half packs a day.
On the day of his heart attack, Mr. Henry had preexisting atherosclerosis, with three different coronary arteries having some degree of stenosis due to the buildup of plaque. His right coronary artery was occluded, but it was being supported by collaterals from the obtuse marginal branch system. The occlusion of the right coronary artery was not then causing any symptoms. Mr. Henry’s heart attack occurred when the obtuse marginal branch of the circumflex coronary artery became occluded. He was transferred to the hospital, where he underwent a cardiac catheterization procedure and an angioplasty stent procedure. He spent two days in the hospital and fully recovered from that heart attack. A stress test conducted ten days after the heart attack revealed the right coronary artery occlusion, for which he underwent triple bypass surgery.
Mr. Henry’s preexisting condition is not a bar to receiving benefits. “An employer takes an employee as it finds him or her; a preexisting infirmity does not eliminate the opportunity for a worker’s compensation claim provided the employment aggravated or accelerated the injury for which compensation is sought.” Spivey v. Novartis Seed Inc., 137 Idaho 29, 33, 43 P.3d 788, 792 (2002). “Aggravation of a preexisting condition may constitute an injury if it is precipitated by an accident.” Painter v. Potlatch Corp., 138 Idaho 309, 312, 63 P.3d 435, 438 (2003). An “accident” is defined as “an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury.” I.C. § 72-102(18)(b). “The claimant must prove to a reasonable degree of medical probability *146 that the injury for which benefits are claimed is causally related to an accident occurring in the course of employment.” Stevens-McAtee v. Potlatch Corp., 145 Idaho 325, 332, 179 P.3d 288, 295 (2008).
In this case, Mr. Henry’s cardiologist was the only medical expert who testified regarding the causation of the heart attack. He explained that the heart attack was caused when preexisting atherosclerotic plaque in Mr. Henry’s artery ruptured, which was the inciting event of a coronary thrombosis. The issue with respect to causation was whether the plaque rupture was causally related to Mr. Henry’s employment.
The cardiologist testified that mental stress, anxiety, exercise, and cold weather can cause blood pressure to go up, which puts hemodynamic stress on the artery, and that “the hemodynamic stress and probably other factors that are hormonal related release of certain hormones during stress and anxiety can cause an atherosclerotic plaque to rupture.” Prior to the hearing, Mr. Henry’s attorney sent a letter to the cardiologist asking whether certain specified conditions that existed with respect to Mr. Henry’s employment could have caused his heart attack. The conditions included mental stress, anxiety, physical exertion, and being in cold weather. The attorney described them in the letter as follows:
Mr. Henry arrived for work on the morning of November 15, 2009, very early, about 6:30 a.m. Mr. Henry tells me that it was below freezing, dark and windy out at the state prison south of Boise.
Mr. Henry was late to work and got out of his car and walked quickly to the first building which Mr. Henry tells me is approximately 75 yo [sic] 100 yards away from the parking lot. By the time Mr. Henry got to the first administration building he did not feel very good, kind of had a general feeling of malaise, but had no specific symptoms.
Mr. Henry went in to the administration building where it was nice and warm and went through a check through process required by his employer. He then went back outside and walked as fast as he could another 450 yards to a second building. Mr. Henry tells me that he was late to work, worried about his job, and walked as fast as he could this last 450 yards in the cold weather.
By the time Mr. Henry got to the front door of the second building, he was sweating profusely and his co-workers immediately asked if he was alright. Mr. Henry indicates that he was taken to a break room and sat down. Over the next half hour, he continued to sweat profusely, his heart was racing, and these symptoms continually and gradually got worse. By 7:00 a.m., Mr. Henry notified his boss that he was pretty certain that he was having a heart attack and asked to be transported to the hospital.
The cardiologist responded by stating that “the temperature, the time of day, the activity level and the mental stress he was under, I think it is quite likely that those factors contributed to his myocardial infarction that day.”
In his later deposition, the cardiologist explained that mental stress, anxiety, physical exertion, and being in cold weather were circumstances that could trigger a heart attack. He stated that the heart attack could have happened without such triggers and that one could never be certain that these circumstances were the trigger. However, he explained that “you can only make the conclusion that because the heart attack occurred on that day, and those activities were occurring at that time, and those events were occurring, that there has to be some contribution to that heart attack on that day.” He added that the triggers were not the sole cause of the heart attack, but in his opinion they were contributors which were 50% responsible for causing the heart attack.
Respondents’ counsel then asked the cardiologist to consider factors that were occurring prior to Mr. Henry’s arrival at work. They were that Mr. Henry was aware he was running late before leaving his home in Caldwell, that he was anxious about getting to work on time, that his car was parked outside all night in the cold weather, and that he started the ear and left for work without allowing it to warm up first. The attorney asked whether the cardiologist thought that *147 any of those factors may have triggered the onset of the heart attack that morning. The cardiologist answered that those factors should have been considered, but he could not tell whether the heart attack was triggered by them or by the circumstances that occurred after Mr. Henry arrived at work. He testified as follows:
So is there a time when he’s been exposed to the scenario that you described, is that leading up to or helping prepare for this occlusion, is this a contributor to it, it really becomes into fine points that are so difficult to be factual or scientifically based that you just can’t distinguish that exact degree of contribution.
We don’t know what’s going on inside that artery. Was that artery — had a small plaque rupture during that time when he first got in the car? Was it happening as he was driving? Was it little bits of splitting of that atherosclerotic cap? Were things beginning to develop back then?
With any scientific certainty you can’t answer that question. You can’t say that you know that that was happening. What scientifically you can say is when the onset of symptoms occurred, the artery at that time did close, and the heart attack began at that time.
But can you say where along the day or the day before what was the stressing his system, when was this — when was the inevitable day that this thing was going to happen? You have to look at it, I think, major stressors and minor stressors.
And if you look at things, you know, the cold car, the cold steering wheel, the driving through traffic, were those stressors that were contributing? They likely could have been, should have been, you know, considered. But can you — how far can you dissect that down? That’s where I get in trouble of dissecting down all those, you know, minute events that begin to occur.
And I can’t go that fine for you as you’d like me to be discerning which was the one, was it the cold car, the steering wheel, the traffic, the getting out? Certainly in his perception, at the time of my history taking with him, during the time of it and then subsequently going into more depth afterwards, he didn’t relate to me those events____
So I can’t pin that down to you in a certainty the preceding — earlier in the— preceding events earlier in the day what contributed to that, what percent. Very difficult for me to give you a discrete, scientifically based answer.
For you to ask me what’s the contribution of the cold morning getting in the car and the drive to Boise is for me too fine a point to be so accurate to give you an opinion on what contribution — I just can’t give that.
The Commission interpreted the cardiologist’s testimony as being able to identify when the blockage of the artery occurred because there was an onset of symptoms, but being unable to identify whether the plaque rupture that caused the blockage occurred as a result of stressors prior to Mr. Henry arriving at work or after he had arrived at work. The Commission stated:
The sense that emerges from the quoted testimony is that blockage of the artery immediately leads to symptoms typically associated with a myocardial infarction. Therefore, one can determine when the blockage occurred by looking to the onset of symptomatology. However, [the cardiologist] was much more circumspect about identifying the event or events which made the occurrence of the blockage inevitable. It is impossible, in other words, to say whether the inciting events that led to the plaque rupture occurred prior to Claimant’s arrival on the premises, or subsequent thereto.
“The Industrial Commission, as the factfinder, is free to determine the weight to be given to the testimony of a medical expert.” Eacret, 136 Idaho at 737, 40 P.3d at 95. “When deciding the weight to be given an expert opinion, the Commission can certainly consider whether the expert’s reasoning and methodology has been sufficiently disclosed and whether or not the opinion takes into consideration all relevant facts.” Id. The Commission found that the cardiologist “was unable to opine which of *148 these [pre-arrival at work or post-arrival] activities/events made it inevitable that Claimant would suffer the November 15 thrombosis when he did.”
Mr. Henry argues that the Commission erred because the cardiologist was clear and unequivocal in his testimony that the artery blockage occurred after Mr. Henry’s arrival at work. Mr. Henry points to the following testimony: “I don’t think that artery closed when he was getting in the car that morning or when he drove from Caldwell to Boise. I think it closed when he was walking up those stairs, and it hit him very suddenly.” However, the issue of causation is not when the artery became blocked. It is when the plaque rupture occurred that ultimately caused the blockage.
In its opinion, the Commission stated that a pivotal issue of causation was “ascertainment of when the thrombosis actually occurred” because “if the circumflex artery blockage occurred prior to Claimant’s arrival at the workplace, it is impossible to associate that event with his post-arrival activities.” The Commission then discussed evidence that it stated suggested an onset of symptoms prior to Mr. Henry’s arrival at work.[1] Mr. Henry contends that the Commission erred by relying upon such evidence to discount the cardiologist’s opinion as to when the occlusion occurred.
As stated above, the issue of causation hinges upon when the plaque ruptured, not when the occlusion ultimately occurred. Although the Commission stated that “there is also testimony of record which would suggest an onset of symptomatology prior to Claimant’s arrival on the premises,” it did not base its decision upon such testimony. After discussing it, the Commission stated, “Considering the totality of the evidence, even the fact of Claimant’s worsened post-arrival condition ultimately fails to establish that the injurious event which ultimately caused the blockage occurred after Claimant arrived at the work-site.” (Emphasis added.)
In this case, Mr. Henry had the burden of proving that the event which ultimately caused the blockage of his artery was work related. The Commission found that he had failed to do so because the cardiologist could not state that the plaque rupture— the event that ultimately caused the blockage — occurred at work. The Commission concluded its analysis by stating:
In the final analysis, [the cardiologist’s] testimony is insufficient to establish that Claimant’s post-arrival activities were responsible for causing or contributing to the occurrence of Claimant’s myocardial infarction. The evidence just as easily supports the proposition that it was something that happened prior to Claimant’s arrival at the worksite that made his heart attack inevitable and caused it to occur when and how it did.
(Citation to the record omitted.)
The Commission determined that Mr. Henry had failed to prove that he suffered an industrial accident. An industrial accident is defined as “an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury.” I.C. § 72-102(18)(b). The plaque rupture certainly was “an unexpected, undesigned, and unlooked for mishap, or untoward event” and it certainly caused an injury — the blockage of the right circumflex obtuse marginal artery. However, to be an industrial accident, the accident must be one “arising out of and in the course of any employment covered by the worker’s compensation law.” I.C. § 72-102(18)(a). “The words ‘out of have been held to refer to the origin and cause of the accident and the words ‘in the course of refer to the time, place, and the circumstances under which the accident occurred.” Dinius v. Loving Care and More, Inc., 133 Idaho 572, 574, 990 P.2d 738, 740 (1999). The Commission ultimately determined that Mr. Henry had failed to prove that the plaque rupture arose out of and in the course of his employment. It *149 concluded that he “has failed to establish to a reasonable medical probability that his heart attack was triggered by his activities at work on November 15, 2009.” Its finding in that regard is not clearly erroneous.
The dissent tries to play cardiologist and provide testimony that Mr. Henry’s cardiologist was unable to provide. The issue in this case is not when the heart attack occurred. The heart attack is the injury, and for Mr. Henry to be entitled to compensation there must have been an industrial accident that caused that injury. In this case, the accident would have to have been the rupture of atherosclerotic plaque. As the cardiologist testified: “When an atherosclerotic plaque ruptures, that is the inciting event of a coronary thrombosis. So anxiety, cold weather, physical activity, you have all the milieu in place to cause a coronary thrombosis to occur.”
A thrombosis is the “intravascular coagulation of the blood in any part of the circulatory system,” http://dictionary.reference.com/ browse/thrombosis (accessed: January 17, 2013). The cardiologist did not testify as to how long after the plaque rupture it would have taken for the blood clot to form to the extent that it blocked the artery.
The cardiologist’s opinion as to the cause of the heart attack was based upon the temporal relationship between known stressors and the occurrence of the heart attack. As to the cause of the heart attack, he testified that “you can only make the conclusion that because the heart attack occurred on that day, and those activities were occurring at that time, and those events were occurring, that there has to be some contribution to that heart attack on that day.” When the cardiologist was informed that some of the stressors he identified occurred prior to Mr. Henry’s arrival at work and was asked whether they could have triggered the heart attack, he said he could not answer that question with any scientific certainty. All that he could say is that the heart attack occurred after Mr. Henry arrived at work. His testimony was as follows:
We don’t know what’s going on inside that artery. Was that artery — had a small plaque rupture during that time when he first got in the car? Was it happening as he was driving? Was it little bits of splitting of that atherosclerotic cap? Were things beginning to develop back then?
With any scientific certainty you can’t answer that question. You can’t say that you know that that was happening. What scientifically you can say is when the onset of symptoms occurred, the artery at that time did close, and the heart attack began at that time.
What the cardiologist did not say after being informed of the stressors that existed prior to Mr. Henry’s arrival at work is significant. The cardiologist did not exclude as a possible cause of Mr. Henry’s heart attack the stressors that were occurring prior to Mr. Henry’s arrival at work. He did not state that those stressors occurred too long before the onset of symptoms to have precipitated the plaque rupture. He did not, as asserted by the dissent, reaffirm his prior opinion that the cause of the heart attack was work-related. All he could say with any scientific certainty was that the heart attack occurred after Mr. Henry arrived at work.
The hearing officer was not required to determine the cause of Mr. Henry’s heart attack. Mr. Henry was required to prove the cause by producing expert testimony showing that the plaque rupture was an industrial accident. His cardiologist did not so testify after he was informed of the stressors that existed prior to Mr. Henry’s arrival at work. Although the dissent is willing to read between the lines and infer opinions not actually rendered by the cardiologist, the hearing officer was not required to do so.
IV.
Conclusion.
We affirm the order of the Industrial Commission, and we award respondents costs on appeal.
Justices W. JONES and HORTON concur.

. Mr. Henry testified that when he arrived at work an unnamed coworker had stated that he did not look well. Another coworker testified that after the heart attack, Mr. Henry told him that he was not feeling well when he came to work that day and that he should have paid attention to how he was feeling.