931 P.2d 1207

**Kevin JACKMAN, Claimant–Respondent,**

v.

**STATE of Idaho, INDUSTRIAL SPECIAL INDEMNITY FUND, Defendant–Appellant.**

**No. 22637.**

Supreme Court of Idaho,
Pocatello, September 1996 Term.

Jan. 30, 1997.

Alan G. Lance, Attorney General, Boise; McDevitt, Meyers & Thomsen, Pocatello, for defendant–appellant. Defendant–Appellant did not participate in oral argument.

Jenkins Law Office, Idaho Falls, for claimant–respondent. Bradley D. Parkinson argued.

McDEVITT, Chief Justice.

This is a case involving the denial of worker's compensation benefits by the Industrial Special Indemnity Fund (ISIF). ISIF denied worker's compensation benefits to the claimant based upon ISIF's contention that the claimant's request for benefits was collaterally estopped and time-barred. The Industrial Commission (Commission) ruled in favor of the claimant and ISIF appealed. We reverse the decision of the Commission.

## I.

### FACTS AND PRIOR PROCEEDINGS

The claimant, Kevin L. Jackman (Jackman), was born on January 22, 1960, and died on November 17, 1994. At the time of his death, Jackman was 34 years old, the father of two minor children, and the husband of Michelle Gibson.

Jackman grew up in Blackfoot, Idaho and attended school in Blackfoot until the 10th grade, when he dropped out of school and began working at State Hospital South (SHS) as a psychiatric technician.[1] Jackman's employment with SHS began in 1976.

Jackman had his first total hip replacement surgery on September 23, 1977, which was due to an infection. After Jackman's September 1977 surgery, Jackman could not run or participate in sports due to a limp.

Jackman was able to return to work at SHS after his September 1977 surgery. Following the September 1977 surgery, Jackman did relatively well for about a year, when the pain in Jackman's hip returned.

On October 5, 1983, Jackman had total hip surgery that removed his previous socket, involved bone grafting, and put a prosthesis in place. Following Jackman's October 1983 surgery, Jackman relied upon crutches between six months to a year and a cane for the following six months. After Jackman's October 1983 surgery, Jackman's doctor concluded that Jackman would always "have significant physical restrictions in order to get along." Jackman continued to experience pain with prolonged sitting, standing, or walking up to February 11, 1986, at which time Jackman was examined by Dr. Harold Dunn who concluded that Jackman's pain was "probably a permanent condition."

On May 20, 1986, Jackman obtained a medical release to return to work at SHS that was conditioned upon Jackman only making rounds, charting, not lifting any

heavy items, and not having to move patients around. Jackman returned to work at SHS on May 28, 1986, as a psychiatric technician.

On August 13, 1986, Jackman fell on a cement floor after a patient fell on Jackman. Jackman experienced a great deal of pain and had a hard time walking, standing, or sitting after his August 13, 1986 accident. Jackman completed a notice of injury to his employer August 25, 1986.

Jackman had a third total hip replacement on September 3, 1987.[2] After Jackman's September 1987 hip surgery, Jackman continued to experience pain in both his hip and back and eventually Jackman was required to have back surgery which was performed on July 14, 1988.

Following Jackman's July 1988 back surgery, Jackman experienced constant pain and was limited to lying around the house. Jackman never returned to work.[3]

With regard to Jackman's notice of injury and claim for benefits, Jackman's claims against SHS and SHS's surety, the State Insurance Fund (SIF), were settled pursuant to a Lump Sum Agreement (Agreement) that was entered into on February 8, 1990. On February 20, 1990, the Commission entered an order approving the Agreement and discharging SHS and SIF of all liability relating to Jackman's August 13, 1986 accident.

Jackman did not file an application requesting a hearing for compensation and award against ISIF until the complaint in this case was filed on January 25, 1994.

Jackman's January 25, 1994 complaint, claimed that Jackman had "[s]eptic arthritis since age 16, which required total hip arthroplasty in 1979 and was revised for acetabular loosening in 1982 and in 1986 or 1987." Jackman's complaint stated:

Claimant cannot walk, sit for any prolonged period of time. Claimant cannot bend, stoop, twist because of the pain in

---

1. Jackman's duties as a psychiatric technician included charting, working with patients, and monitoring vital signs.

2. Dr. Thomas Setter described the September 3, 1987 surgery, as taking out Jackman's previous total hip and replacing it with a new hip.

3. In April 1992, Jackman had a sewing job with Dawn Enterprises for 30 days. At the end of the 30 days, Jackman applied for the job, but was not hired.

his right hip and back. Claimant's lack of education limit him only to being a CNA or Psych Tech which he can no longer do without causing him severe pain and exceeding his physical restrictions.

On November 17, 1994, Jackman died of a heart attack caused by an overdose of medication, (Lortab), and alcohol.

The Commission issued an order on November 16, 1995, finding Jackman was totally and permanently disabled under the odd-lot doctrine. The Commission ruled that Jackman was entitled to recover from ISIF income and benefits for his total and permanent disability from September 25, 1989, to November 17, 1994.[4] ISIF appealed to the Idaho Supreme Court.

## II.

## STANDARD OF REVIEW

■ We review the Commission's findings of fact to determine whether they are supported by substantial and competent evidence. *Smith v. J.B. Parson Co.,* 127 Idaho 937, 941, 908 P.2d 1244, 1248 (1996). We exercise free review over questions of law. *Langley v. Industrial Special Indem. Fund,* 126 Idaho 781, 784, 890 P.2d 732, 735 (1995).

## III.

## JACKMAN'S CLAIM AGAINST ISIF IS BARRED BY THE DOCTRINE OF COLLATERAL ESTOPPEL (ISSUE PRECLUSION)

On September 29, 1989, Dr. Setter gave Jackman an impairment rating of 33% of the whole person. Dr. Setter's impairment rating for Jackman included the multiple surgeries on Jackman's right hip and the loosening of Jackman's right hip prosthesis.

The Agreement states that, "Dr. Setter examined the Claimant and found that he suffered a 33% whole man impairment as a result of his Grade I L6–S1 spondylolisthesis, right hip pain and total hip arthroplasty."

The Agreement apportioned the lump sum settlement as follows:

Permanent Partial Impairment

33% whole man at 165 weeks
at $164.45 a week         $27,134.25

■ Jackman contends that the Agreement determined that Jackman suffered a 33% whole person impairment, without determining the issue of apportioning new and preexisting impairments. Jackman claims that of the 33% whole person impairment rating, 13% is attributable to Jackman's preexisting permanent physical impairment and 20% is attributable to the August 13, 1986 accident.

ISIF argues that Jackman's claim against ISIF is collaterally estopped. We agree.

In *Magic Valley Radiology, P.A. v. Kolouch,* 123 Idaho 434, 849 P.2d 107 (1993), this Court set forth the appropriate test for determining whether collateral estoppel, (issue preclusion), will prevent the relitigation of issues actually decided in a prior case:

(1) Did the party "against whom the earlier decision is asserted ... have a 'full and fair opportunity to litigate that issue in the earlier case?'" (2) Was the issue decided in the prior litigation "identical with the one presented in the action in question?" (3) Was the issue actually decided in the prior litigation? This may be dependent on whether deciding the issue was "necessary to [the prior] judgment." (4) "Was there a final judgment on the merits?" (5) "Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?"

*Magic Valley Radiology, P.A.,* 123 Idaho at 439, 849 P.2d at 112.

Jackman contends that in his previous case against SIF and SHS he was deprived of a full and fair opportunity to litigate the issue of apportionment pursuant to I.C. § 72–332. Jackman's present claim against ISIF for apportionment is tied to the same impairment rating Jackman relied upon in his claim

---

4. ISIF does not challenge the Commission's finding that Jackman was totally and permanently disabled under the odd-lot doctrine commencing September 25, 1989. ISIF contends Jackman is not entitled to total and permanent disability benefits from September 25, 1989, to November 17, 1994, arguing that Jackman's action against ISIF is collaterally estopped and the statute of limitations has run on Jackman's claim against ISIF.

against SIF and SHS: 33% whole person impairment. Jackman had a fair opportunity and incentive to vigorously litigate his whole person impairment rating in Jackman's case against SIF and SHS.

Jackman argues the doctrine of collateral estoppel should not be applied in this case since the issue in the present case is distinguishable from the issue raised in Jackman's action against SIF. Jackman contends that the issue in Jackman's case against SIF was the total value of Jackman's claim against SIF and that the apportioning of benefits between ISIF and SIF was never addressed in the Agreement. Jackman also points out that there was no consideration in the Agreement for Jackman to forgo his claims against ISIF.

While Jackman has not had an opportunity to litigate the issue of apportionment pursuant to I.C. § 72–332, Jackman has failed to present additional allegations of a preexisting permanent physical impairment, above the 33% impairment rating relied upon in the Agreement. Jackman cannot rely upon the *same* percentage impairment rating in order to attain further benefits from ISIF. Jackman must present additional evidence of impairment in order to increase his impairment rating. The issue presented in the proceeding against SIF and SHS, compensating Jackman for his impairment rating of 33% whole person, is identical to the issue Jackman presently raises: whether ISIF must compensate Jackman for a portion of the same 33% whole person impairment.

In order for the doctrine of collateral estoppel to apply, there must be a final judgment on the merits. On February 20, 1990, the Commission approved the Agreement, including the 33% whole person impairment rating, pursuant to I.C. § 72–404.

In *Davidson v. H.H. Keim Co.*, 110 Idaho 758, 718 P.2d 1196 (1986), the issue presented was whether the Commission's approval of a lump sum agreement pursuant to I.C. § 72–404 constituted a final decision of the Commission such that a motion for reconsideration pursuant to I.C. § 72–718 would be applicable. *Davidson,* 110 Idaho at 759–60, 718 P.2d at 1197–98. The *Davidson* Court held that the Commission's decision to approve a

lump sum agreement pursuant to I.C. § 72–404 was a final decision of the Commission. *Davidson,* 110 Idaho at 760, 718 P.2d at 1198; *see also Drake v. Industrial Special Indem. Fund,* 128 Idaho 880, 882, 920 P.2d 397, 399 (1996) (holding approved agreement is final decision of Commission). The Commission's February 20, 1990 order, approving the Agreement pursuant to I.C. § 72–404, was a final judgment on the merits.

Despite the fact that ISIF was not a party to Jackman's Agreement with SIF and SHS, ISIF may still assert the doctrine of collateral estoppel in the present case. Jackman was a party to the prior action against SIF and SHS and is the party against whom the plea of collateral estoppel has been asserted. *See Western Indus. and Envtl. Servs., Inc. v. Kaldveer Assoc., Inc.,* 126 Idaho 541, 545, 887 P.2d 1048, 1052 (1994) (holding party against whom the plea of collateral estoppel is asserted must have been a party to or in privity with the party in the earlier case).

Jackman cannot litigate the issue of apportionment based upon the identical 33% whole person impairment rating Jackman relied upon in entering into the Agreement with SIF and SHS. The Agreement provided Jackman a lump sum award based upon his 33% whole person impairment rating. Jackman now seeks to attribute 13% of his 33% whole person impairment to a pre-existing condition, thereby increasing his whole person impairment rating to 46%, without presenting additional allegations of pre-existing impairment. Jackman's claim against ISIF is barred by the doctrine of collateral estoppel (issue preclusion).

Since we hold that Jackman's claim against ISIF is barred by the doctrine of collateral estoppel (issue preclusion), we do not address the issue of whether Jackman's claim against ISIF was barred by the statute of limitations.

## IV.

## CONCLUSION

The decision of the Commission is reversed and this case is remanded to the Commission

for proceedings consistent with this opinion. We award costs to ISIF.

JOHNSON, TROUT, SILAK and SCHROEDER, JJ., concur.