128 P.3d 941

John CLARK, Claimant–Respondent,

v.

Idaho TRUSS, Employer, and Insurance Company of the West, Surety, Defendants–Appellants,

and

State of Idaho, Industrial Special Indemnity Fund, Defendant.

No. 31378.

Supreme Court of Idaho, Boise, January 2006 Term.

Jan. 25, 2006.

Penland, Munther & Goodrum Chtd, Boise, for appellants. Paul S. Penland argued.

Richard S. Owen, Nampa, for respondent, argued.

EISMANN, Justice.

This is an appeal from an order of the Industrial Commission apportioning disability to an employer under Idaho Code § 72–332. The two primary issues on appeal are whether the Commission must take into consideration a claimant's pre-existing permanent partial disability when determining the employer's liability for the disability caused by the subsequent injury and whether the Commission erred in failing to be persuaded

by expert opinion testimony that there was an organic basis for the claimant's decreased mental functioning. We affirm the order of the Commission.

## I. FACTS AND PROCEDURAL HISTORY

John Clark (Claimant) engaged in heavy physical labor throughout his working life. He had dropped out of school at age fourteen, and could not read or write well. At age sixteen, he moved from California to Idaho and began working in the mines. He injured his back in 1981, and ceased working in the mines during a strike in 1986. He was incarcerated from 1989 to 1992, and upon his release he began working for Idaho Truss (Employer).

In 1993 he developed carpal tunnel syndrome in his right hand and underwent carpel tunnel release surgery. In 1996 he and Employer entered into a lump sum agreement with respect to that injury. The agreement awarded him benefits based upon a permanent partial impairment (PPI) of "10% upper extremity" and a permanent partial disability (PPD) of 5%. The Industrial Commission (Commission) approved that agreement under Idaho Code § 72–404.

In 1996 Claimant suffered a ruptured right biceps tendon. In 1999 he and Employer entered into a lump sum agreement resolving his worker's compensation claim with respect to that injury. The agreement awarded him benefits based upon a PPI of 4.4% and a PPD of 16%. The Commission also approved that agreement under Idaho Code § 72–404.

In 2000, at age fifty-six, Claimant suffered a low back injury and underwent surgery. As a result of that injury, he was rendered totally and permanently disabled. Utilizing the formula mandated by this Court in *Carey v. Clearwater County Road Dept.*, 107 Idaho

109, 686 P.2d 54 (1984) (the *Carey* formula), the Commission apportioned 27% of his total and permanent disability to Employer. In making the award, the Commission did not take into consideration Claimant's pre-existing PPD ratings totaling 21%. The Commission also rejected the opinion testimony of Employer's expert that Claimant's learning disability was due to an organic brain injury or dysfunction which would constitute a pre-existing physical impairment to be considered when applying the *Carey* formula. Employer then appealed.

## II. ISSUES ON APPEAL

A. Did the Commission err in failing to apply collateral estoppel or judicial estoppel to the prior lump sum agreements?

B. Is Employer entitled to a credit for benefits previously paid to Claimant pursuant to the prior lump sum agreements?

C. Did the Commission err in rejecting the opinion testimony of Employer's neuropsychologist?

D. Did the Commission err in striking a motion filed by Employer?

E. Did the Commission deny Employer due process of law?

F. Is Claimant entitled to an award of attorney fees on appeal?

## III. ANALYSIS

**A. Did the Commission Err in Failing to Apply Collateral Estoppel or Judicial Estoppel to the Prior Lump Sum Agreements?**

■ Idaho Code § 72–332(1)[1] requires an allocation of the disability between the employer and the Industrial Special Indemnity

---

1. The statute provides as follows:

    If an employee who has a permanent physical impairment from any cause or origin, incurs a subsequent disability by an injury or occupational disease arising out of and in the course of his employment, and by reason of the combined effects of both the pre-existing impairment and the subsequent injury or occupational disease or by reason of the aggravation and acceleration of the pre-existing impair-

ment suffers total and permanent disability, the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury or occupational disease, including scheduled and unscheduled permanent disabilities, and the injured employee shall be compensated for the remainder of his income benefits out of the industrial special indemnity account.

Fund (ISIF) when an employee's pre-existing physical impairment and subsequent injury combine to render the employee totally and permanently disabled. In such cases, "the employer and surety shall be liable for payment of compensation benefits only for the disability caused by the injury" and the ISIF is liable for the remainder of the employee's income benefits. I.C. § 72–332(1). A disability rating is based upon both the medical factor of permanent impairment and pertinent nonmedical factors. *Jarvis v. Rexburg Nursing Ctr.*, 136 Idaho 579, 38 P.3d 617 (2001); I.C. § 72–102(10). In *Carey v. Clearwater County Road Dept.*, 107 Idaho 109, 686 P.2d 54 (1984), we held that when apportioning a total and permanent disability under Idaho Code § 72–332(1), the nonmedical factors are to be apportioned between the employer and the ISIF in proportion to their respective percentages of responsibility for the PPI.

At the time of the 2000 injury suffered by Claimant, he had two prior PPI ratings that had been approved by the Commission. The 1996 lump sum agreement between Claimant and Employer awarded Claimant benefits based upon a PPI of "10% upper extremity," and the 1999 lump sum agreement awarded him benefits based upon a PPI of 4.4%. Employer alleges that the Commission erred in failing to hold that its approval of the two prior lump sum agreements established the PPI's for those injuries under the doctrines of collateral estoppel or judicial estoppel.

In this case, the Commission determined that Claimant had a PPI of 6% of the whole person from his carpal tunnel injury. Employer admits that the 6% PPI rating is the equivalent of the PPI rating of "10% upper extremity" reflected in the 1996 lump sum agreement. The Commission also determined that Claimant had a 4.4% PPI from his right biceps injury, which is the same PPI rating as reflected in the 1999 lump sum agreement. Thus, Employer admits that the Commission reached the correct result. It simply argues that the Commission should have reached that result in a different manner.

■ Employer correctly argues that when a compensation agreement is approved by the Commission, it is a final and conclusive award of all matters actually adjudicated in the agreement, and collateral estoppel may prevent relitigation of those issues. *Jackman v. State, Indus. Special Indem. Fund*, 129 Idaho 689, 931 P.2d 1207 (1997); *Sund v. Gambrel*, 127 Idaho 3, 896 P.2d 329 (1995) (lump sum agreement was conclusive only with respect to level of disability as it existed at time agreement was approved and was not conclusive as to any subsequent increase in disability). We need not decide, however, whether the Commission should have applied the doctrine of collateral estoppel or judicial estoppel in this case. Employer does not contend that the Commission's findings regarding the PPI ratings for the carpal tunnel injury and the biceps injury were incorrect. Therefore, the alleged error did not affect Employer's substantial rights insofar as this appeal is concerned.

**B. Is Employer Entitled to a Credit for Benefits Previously Paid to Claimant Pursuant to the Prior Lump Sum Agreements?**

■ Employer previously paid Claimant benefits based upon a PPD of 5% with respect to the carpal tunnel injury and a PPD of 16% for the biceps injury. Employer alleges that it should be given a credit for those payments against the disability benefits it is required to pay for Claimant's subsequent back injury. There is no statute providing for such credit. What Employer asks us to do is modify the *Carey* formula to take into account the pre-existing PPD awards totaling 21%. Employer argues that the Commission should have deducted the 21% PPD from the whole person before applying the *Carey* formula, or deducted it after applying the *Carey* formula.

In *Carey*, we noted the apparent inconsistency in apportioning disability between the employer and the ISIF in three similar cases. In two cases, the nonmedical factors resulting from the subsequent injury were apportioned to the employer, and in one they were apportioned to the ISIF. We determined that "some uniform rule of law should necessarily be imposed in these similar cases, to achieve consistency and clarity for

the parties and for the commission." *Carey v. Clearwater County Road Dept.*, 107 Idaho 109, 118, 686 P.2d 54, 63 (1984). We concluded, "[I]n an odd-lot case where the fund is involved, [an appropriate solution] is to prorate the non-medical portion of disability between the employer and the fund, in proportion to their respective percentages of responsibility for the physical impairment." We see no reason to alter the *Carey* formula as requested by Employer. The prior PPD ratings are adequately taken into account by using their associated PPI ratings in the allocation. The Commission did not err in failing to adjust the *Carey* formula as requested by Employer.

**B. Did the Commission Err in Rejecting the Opinion Testimony of Employer's Neuropsychologist?**

■ Employer next argues that Claimant has a brain dysfunction that the Commission should have included as a pre-existing impairment in its application of the *Carey* formula. This Court has previously held that a "permanent physical impairment" under I.C. § 72–332 must be a physical disability evidenced by physical manifestations. "This Court has long held that a 'permanent impairment' as defined by I.C. § 72–422 and as incorporated by reference in I.C. § 72–332(2) as a 'permanent physical impairment' is confined to physical disabilities evidenced by physical manifestations." *Langley v. State, Indus. Special Indem. Fund*, 126 Idaho 781, 787, 890 P.2d 732, 738 (1995).

In an attempt to prove that Claimant's cognitive impairments were the result of an organic brain injury, Employer presented the testimony of Dr. Beaver, a neuropsychologist. With regard to the testimony given by Dr. Beaver, the Commission stated,

> [Employer relies] upon Dr. Beaver's opinions to argue that Claimant's brain dysfunction is a permanent *physical* impairment as required by Idaho Code § 72–332. However, Dr. Beaver's tests—at most—indirectly suggest Claimant may have suffered some injury to his brain tissue. No X-ray, MRI, PET scan, or similar diagnostic study directly shows damage to Claimant's brain tissue. There is no cyst or tumor. There is no indication that Claimant suffers from a chromosomal abnormality as one would find, for example, in an individual with Down's syndrome. There is no direct evidence of an imbalance of chemicals in Claimant's brain. Absent direct evidence of an injury to Claimant's brain tissue, any suggestion of causation or of a *physical* component to Claimant's learning disability or borderline intellectual functioning is too speculative to be given weight. Surely, every person less intelligent than Einstein should not be considered permanently physically impaired under Idaho Worker's Compensation Law. (Emphasis in original.)

■ Employer argues that the Commission erred by rejecting the opinion testimony of Dr. Beaver that Claimant's impaired mental functioning was the result of organic brain dysfunction. In reaching its factual determinations, the Industrial Commission is not bound to accept the opinion of any particular doctor. The opinions of an expert are not binding upon the trier of fact, but are advisory only. *Johnson v. Amalgamated Sugar Co.*, 108 Idaho 765, 770–71, 702 P.2d 803, 808–09 (1985) (citation omitted). *Accord, Eacret v. Clearwater Forest Indus.*, 136 Idaho 733, 40 P.3d 91 (2002). "The Industrial Commission, as the factfinder, is free to determine the weight to be given to the testimony of a medical expert. The Commission can accept or reject the opinion of a physician regarding impairment. We will not disturb the Commission's conclusions as to the weight and credibility of expert testimony unless such conclusions are clearly erroneous." *Eacret v. Clearwater Forest Indus.*, 136 Idaho 733, 737, 40 P.3d 91, 95 (2002) (citations omitted). The Commission was not persuaded by Dr. Beaver's testimony that he could infer Claimant had an organic brain injury from the psychological testing alone. The weight, if any, to be given Dr. Beaver's testimony was for the Commission to decide.

**C. Did the Commission Err in Striking a Motion Filed by Employer?**

■ The evidentiary hearing in this case was on March 5, 2004, and the parties were given an opportunity to submit post-hearing

briefs. Employer filed its post-hearing brief on June 7, 2004. The next day it filed a document entitled "Renewed Motions Relating to Discovery Issues, In Limine, Withdrawal of Objection and Motion to Deem Issue Waived and Brief." In its order filed on October 19, 2004, the Commission ordered the document stricken, stating that it "constitutes a thinly-disguised reply brief by Defendants." Employer argues that the Commission abused its discretion in striking the document because it could not constitute a reply brief due to the fact that Claimant had not yet filed his post-hearing brief.

Employer's stricken motion asked: (1) To have Claimant's answers to certain interrogatories deemed to be established as admissions; (2) To apply the doctrine of collateral estoppel regarding Claimant's PPI and PPD ratings as set forth in the two lump sum agreements; (3) To preclude Claimant from addressing apportionment of disability between Employer and ISIF because in answers to interrogatories Claimant stated he took no position on the issue of apportionment; and (4) To preclude Claimant from recovering for medical treatment because of Claimant's failure to submit testimony addressing the medical bills and to address them in Claimant's opening brief.

█ The Commission addressed the first three issues in its order. Employer did not challenge on appeal the Commission's resolution of issues (1) and (3), and we have addressed issue (2). With respect to issue (4), Employer has not alleged that the Commission committed any error in its award of medical benefits. The appellant bears the burden of showing prejudicial error on appeal. *Guillard v. Department of Employment*, 100 Idaho 647, 603 P.2d 981 (1979). Even if the Commission abused its discretion in striking Employer's motions, any such error was harmless.

## D. Did the Commission Deny Employer Due Process of Law?

█ Employer alleges in general terms that various actions by the Referee or the Commission denied it due process of law. The full extent of Employer's argument on this issue in its opening brief is as follows:

In the instant case, the following give rise to a question as to the forum's willingness to hear Idaho Truss in a meaningful way at a meaningful hearing. They include, *inter alia,*

1. The Commission's failure/refusal to include Idaho Truss' issues set forth in its response to Clark's Request for Calendaring in the Notice of Hearing. (Clerk's record, p. 25–30)

2. The Commission's failure to address and include as issues the areas addressed in Idaho Truss' Objection to Notice of Hearing in an amended Notice of Hearing. (Clerk's record)

3. The Commission's rulings and orders with respect to the issues raised by Idaho Truss over the settlement between the claimant and the ISIF. (Clerk's record, pp. 32, 52, 60, 63, 64, 65, 67, 71)

4. The Commission's dealing with Idaho Truss' Renewed Motion, etc., (Clerk's record, p. 215) as a mischaracterization of it as a thinly disguised reply brief when it was, in fact, noticing of the motion.

5. The Commission's mischaracterization of Idaho Truss' collateral estoppel as an effort to obtain "admissions" by way of requests for admissions which are not allowed under the J.R.P. (Clerk's record, p. 241)

These are only excerpts—the record is full of them. They collectively demonstrate, in essence, a refusal to consider and address Idaho Truss' issues.

Employer did not include any analysis or argument as to how it was allegedly deprived of due process of law. Arguments of error which were not supported by argument or authorities in the brief will not be considered on appeal. *State v. Smoot*, 99 Idaho 855, 590 P.2d 1001 (1978). Employer apparently did not believe that this assignment of error merited any analysis, and therefore we will not address it.

## E. Is Claimant Entitled to an Award of Attorney Fees on Appeal?

█ The Claimant requests an award of attorney fees on appeal pursuant to Idaho Code § 72-804. That statute permits an

award of attorney fees on appeal if the employer or surety has contested a claim for compensation made by an injured employee without reasonable ground. *Spivey v. Novartis Seed Inc.,* 137 Idaho 29, 43 P.3d 788 (2002). The issue of whether the *Carey* formula should be modified to expressly consider a pre-existing PPD rating was an issue of first impression. Therefore, we will not award attorney fees on appeal.

## IV. CONCLUSION

We affirm the order of the Commission, and award Claimant costs, but not attorney fees, on appeal.

Chief Justice SCHROEDER and Justices TROUT, JONES, and Justice Pro Tem KIDWELL concur.